## ADRIAN W. ARMOR et al., Appellants, v. JOSEPH FREY.

### Division Two, March 15, 1910.

1. **JUDGMENT: In Suit to Quiet Title.** In a suit to ascertain, adjudge and determine the title, under section 650, Revised Statutes 1899, the court should not simply dismiss plaintiffs' bill, where the real point in issue is the ascertainment of what interest plaintiffs and defendant took under a certain will. If the court finds plaintiffs have no title or interest, it should so state in the decree; and if it finds defendant has the title, then it should not only adjudge but also define his title, interest and estate.

2. **WILLS: Interpretation: Intention.** The statute providing that "all courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them," furnishes the rule for the interpretation and construction of wills.

3. ———: ———: ———: **Rules.** Three cardinal rules are to be held in view in arriving at the meaning of the will: *First,* the intention of the testator is to be ascertained from the whole instrument; *second,* the words used must be understood in the sense indicated by the whole instrument; and, *third,* effect is to be given, if possible, to all the clauses of the will, so that every clause shall have some operation and be effective for some purpose.

4. ————: **Absolute Estate: Cut Down to Life Estate: Rule: Necessary Implication.** The statute (Sec. 4646, R. S. 1899), which provides that "in all devises of lands, in which the words 'heirs,' etc., are omitted, and no expressions are contained in such will whereby it shall appear that such devise was intended to convey an estate for life only, and no further devise be made of the devised premises, to take effect after the death of the devisee to whom the same shall be given, it shall be understood to be the intention of the testator thereby to devise an absolute estate in the same," furnishes the rule for determining whether the will in hand created a fee simple estate in the devisees or by a subsequent clause limited it to a life estate. This statute recognizes that a devise apparently absolute on its face, if standing alone, may by a subsequent clause be limited to a life estate. And the apparently absolute estate may be so limited in express terms or by necessary implication of the terms of the grant.

5. ————: ————: ————: **This Will.** By certain clauses of his will the testator, by the use of the words "I give, devise and bequeath," gave to his children certain lands and personal property, the land being described, and each clause being a separate devise, and some of the clauses devising land also bequeathing personalty. Neither clause gave the devisee power of disposition, and neither said what was to become of so much of the devised estate as should remain at the devisee's death. A subsequent clause was: "Upon the death of my children without issue I direct that the share of such child shall revert to my estate and be divided equally amongst my surviving children and the children of such of my children as may be deceased, share and share alike. Upon the death of any one of my children leaving issue I direct that the property herein given to such child shall go to his or her children, and wife in case of son, in such portion and proportions as he or she may direct by last will and testament, provided no wife of any son or grandson so dying shall take more than a child's share under such will." *Held,* that the will did not give an absolute estate to the children named as devisees, nor is this subsequent clause void for repugnance to the preceding ones, but the apparently absolute estates given by the first clauses are limited by the subsequent one to life estates.

6. ————: ————: ————: **Power of Disposition by Will.** It is nothing unusual to confer upon a life tenant power to dispose of the fee by will. Such power of appointment is often conferred on life tenants, and it may be conferred in terms or by implication, and it may be conferred in either way without enlarging the estate otherwise limited to a life estate into an estate in fee.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston*, Judge.

REVERSED AND REMANDED.

*James B. Park* and *John T. Sturgis* for appellants.

(1) Where no definite estate is in terms given to the first taker—no express words of inheritance or such as imply a fee being used or power of sale given —then a limitation over upon his death is always construed as indicating an intent that such first taker shall have a life estate only. A devise without words of limitation is confined to a life estate by a devise over on the death of the devisee. Gardner on Wills, p. 472, sec. 124; Rood on Wills, p. 370, sec. 540; Page on Wills, secs. 572 and 574; 30 Ency. Law (2 Ed.), p. 741; Underhill on Wills, p. 623, sec. 469; R. S. 1899, sec. 4646; Cross v. Hock, 149 Mo. 325; Bean v. Kenmuir, 86 Mo. 666; Schorr v. Carter, 120 Mo. 409; Harbison v. James, 90 Mo. 411; Walton v. Drumtra, 152 Mo. 501; Dozier v. Dozier, 183 Mo. 137; Thompson v. Craig, 64 Mo. 312; Harbison v. Swan, 58 Mo. 147; Farrar v. Christy, 24 Mo. 453; Wead v. Gray, 78 Mo. 63; Chiles v. Bartleson, 21 Mo. 344; Thomas v. Miller, 43 N. E. (Ill.) 848; Griffiths v. Griffiths, 64 N. E. 1069; Munro v. Collins, 95 Mo. 33; In re Keniston's Will, 73 Vt. 75; Smith v. Bell, 6 Peters 68; Giles v. Little, 104 U. S. 291; Partee v. Thomas, 11 Fed. 769; Rice v. Moyer, 97 Ia. 96; Defreese v. Lake, 109 Mich. 415; Healy v. Eastlake, 152 Ill. 424; Johnson v. Johnson, 38 N. E. (Oh.) 61; Kent v. Morrison, 153 Mass. 137; Baxter v. Bawyer, 19 Oh. St. 490; Anderson v. Hall, 80 Ky. 91; Martin v. Barnhill, 77 S. W. (Ky.) 1097; Pate v. Bushong, 63 L. R. A. (Ind.) 593; Fenstermaker v. Holman, 62 N. E. (Ind.) 699; Jones v. Stites, 19 N. J. Eq. 326; In re Littlewood's Will, 96 Wis. 608; Taylor v. Martin, 18 Atl. (Pa.) 920; Stone v. McEckron, 57 Conn. 194; Taylor v. Bell, 28 Atl. (Pa.) 208.     (2) Every clause in

a will shall have some operation and be effective for some purpose. All the clauses of a will are to be given effect if possible and when absolutely repugnant the last clause is to. prevail. Defendant's construction of the will so as to give the first takers a fee simple entirely eliminates and gives no effect to the later or ninth clause, making the devise over on the death of the first taker. This is not allowable. Page on Wills, sec. 574; 2 Jarman, Wills, pp. 44-46; Naylor v. Goodman, 109 Mo. 543; Gardner on Wills, pp. 373, 374; Bean v. Kenmuir, 86 Mo. 666; Dozier v. Dozier, 183 Mo. 137; Clotilde v. Lutz, 157 Mo. 439; Schorr v. Carter, 120 Mo. 409; Mersman v. Mersman, 136 Mo. 244; In re Keniston's Will, 73 Vt. 75. (3) It is the settled law of this State, and generally, that a life estate may be created by implication as well as by express words. A devise over on the death of the first taker, unless restrained by other parts of the will more positive and controlling, is always construed as creating a life estate. This is but a concrete application of the rule that the intention of the testator governs and that such intention is to be gathered from the whole will. Page on Wills, secs. 572, 574; 30 Ency. Law (2 Ed.), p. 741; Dozier v. Dozier, 183 Mo. 137; Cross v. Hock, 149 Mo. 325; Walton v. Drumtra, 152 Mo. 486; Roth v. Rauschenbusch, 173 Mo. 582; Chiles v. Bartleson, 21 Mo. 344; Schorr v. Carter, 120 Mo. 409; Smith v. Bell, 6 Peters 68; Defreese v. Lake, 109 Mich. 415; Griffiths v. Griffiths, 64 N. E. (Ill.) 1069. Such is the effect of section 4646, Revised Statutes 1899; for if the absence of a "further devise . . . of the devised premises to take effect after the death of the devisee" indicates a fee simple then the presence of such clause necessarily indicates a life estate in such devisee. (4) The limitation over on the death of the testator's children is "to his or her children, and wife in case of a son, in such parts and proportions as he or she may direct by last will and testament."

An unlimited power of disposal by deed or will indicates an estate in fee; but a limited power of appointment or disposal among a class, themselves the object of testator's bounty, indicates a life estate and is such a power as usually goes to a life tenant. 24 Ency. Law (2 Ed.), 446; Gardner on Wills, p. 552; Phelps v. Phelps, 143 Mass. 570; Taylor v. Adams, 93 Mo. App. 277; Ruby v. Barnett, 12 Mo. 3; 2 Redfield on Wills, p. 278; Cornwall v. Wulff, 148 Mo. 562; Grace v. Perry, 197 Mo. 550; Cruse v. McKee, 73 Am. Dec. (Tenn.) 186; Griffiths v. Griffiths, 64 N. E. (Ill.) 1069; Cathey v. Cathey, 49 Am. Dec. 714; Read v. Reid, 25 Beav. 469; 30 Ency. Law (2 Ed.), 702. (5) Remaindermen may maintain a suit to determine title under section 650, R. S. 1899, although the life tenant is yet living. Utter v. Sidman, 170 Mo. 284; Ball v. Woolfolk, 175 Mo. 278. But any equities, such as the value of improvements or liabilities growing out of collateral warranties, will not be adjusted. These are left to future actions. Wilson v. Lubke, 176 Mo. 210.

*Geo. Hubbert* and *Clay & Sheppard* for respondent.

(1) Item number 9 is void for repugnance to the direct and positive gifts by the unlimited terms of the other items. If of any force whatever, this item would control and diminish to a life estate every estate devised by any other item. Such necessary consequence of such interpretation, stamps the appellants' theory of such wholesale destruction of unlimited devises as utterly untenable. "The fundamental rule in the construction of wills is that the intention of the testator, if not inconsistent with some established rule of law, must control, and to ascertain that intention the courts will look to the circumstances under which he makes his will, as to the state of his property and family." Murphy v. Carlin, 113 Mo. 117; McMillan v. Farrow, 141 Mo. 62; Elliott v. Elliott, 10 Am. St.

Rep. 54; Noe v. Kern, 93 Mo. 367; Phelps v. Bates, 1
Am. St. Rep. 92; Hall v. Stephens, 65 Mo. 670; 29 Am.
and Eng. Ency. Law (1 Ed.), p. 367; Nussbaum v.
Evans, 71 Ga. 753; Rose v. McHose, 26 Mo. 590; Peters
v. Carr, 16 Mo. 54; Prosser v. Hardesty, 101 Mo. 593;
Galloway v. Durham, 81 S. W. (Ky.) 659; McClellan
v. McKenzie, 126 Fed. 701; St. Louis Assn. v. Fueller,
182 Mo. 93; Chew v. Keller, 100 Mo. 362; Underwood
v. Cave, 176 Mo. 1; Page on Wills, secs. 574-5; Roth v.
Rauschenbusch, 173 Mo. 582; Roberts v. Crume, 173
Mo. 572; Yocum v. Siler, 160 Mo. 281; Yocum v. Parker,
130 Fed. 722; Balliett v. Veal, 140 Mo. 187; Talbott
v. Hamill, 151 Mo. 293; Small v. Field, 102 Mo. 104;
Cook v. Couch, 100 Mo. 29; Walton v. Drumtra, 152
Mo. 489; Cornwell v. Orton, 126 Mo. 355; St. Louis
Assn. v. Fueller, 182 Mo. 93; Carter v. Long, 181 Mo.
701; Dozier v. Dozier, 183 Mo. 137. In Georgia, where
the testator lived and this will was made, if a deed
contains expressions which, at common law, would
create an estate tail, it is now construed to pass an
estate in fee simple to the donee in tail. Durant v.
Muller, 88 Ga. 251; 2 Black on Judgments, sec. 872;
Rothwell v. Jamison, 147 Mo. 601; Gannon v. Albright,
183 Mo. 23; Gannon v. Pauk, 200 Mo. 75; Moran v.
Moran, 5 L. R. A. (N. S.) 323. In the light of that
Michigan case we may discern that the judgment of
the circuit court in this case is strongly based upon
principles well established elsewhere. In the reflec-
tions of that light we can but see that the after-
expressions in the later clauses of this will are but
shadows of limitations over and without real force as
against the first devises covering the absolute estates.
Roth v. Rauschenbusch, 173 Mo. 582; Wead v. Gray,
78 Mo. 59; Haines v. Talson, 73 Mo. 320. Indeed, cases
are many concurring in the doctrine of Redfield on
Wills, 278, that a gift over is void after an absolute
devise—as a settled rule of American and English law.
Stowell v. Hastings, 59 Vt. 494; Burton v. Gagnon, 180

Ill. 345; Mitchell v. Morse, 77 Me. 423; Van Horne v. Campbell, 100 N. Y. 287; Howard v. Carusi, 109 U. S. 725; Combs v. Combs, 67 Md. 11. Among the later cases in support of the proposition that a devise practically unlimited in its terms will stand effective in fee, against a limitation over in a subsequent clause, because such limitation is repugnant and therefore void, we may cite: McClellan v. Mackenzie, 126 Fed. 701; Mansfield v. Shelton, 67 Conn. 390; Central v. Harris, 62 Conn. 93; Browning v. Southworth, 74 Conn. 224; Wilson v. Turner, 164 Ill. 398; Kohtz v. Eldred, 208 Ill. 60; Mulvane v. Rude, 146 Ind. 476; Channell v. Aldinger, 121 Ia. 292; Jordan v. Woodin, 93 Ia. 453; Spencer v. Scovil, 96 N. W. (Neb.) 1019; Barth v. Barth, 38 S. W. (Ky.) 511; Cox v. Anderson, 69 S. W. (Ky.) 953; Mersereau v. Camp, 92 N. Y. App. Div. 616; Snedeker v. Congdon, 41 N. Y. App. Div. 433; Gilchrist v. Empfield, 194 Pa. St. 397; Cooke v. Bucklin, 18 R. I. 666; Brown v. Strother, 102 Va. 145; Reeves v. School District, 24 Wash. 282. And where there is any reasonable doubt as to whether the testator intended to give a fee or a life estate to vest in the first taker, an expression of power of disposal in such taker, such as appears herein, is conclusive in favor of the fee vesting in him. Walfer v. Hemmer, 144 Ill. 544; Van Gorder v. Smith, 99 Ind. 404; Outland v. Bowen, 115 Ind. 150; Essick v. Caple, 131 Ind. 207; Mulvane v. Rude, 146 Ind. 476; Law v. Douglass, 107 Ia. 606; Combs v. Combs, 67 Md. 17; Dodson v. Sevars, 52 N. J. Eq. 611; Cook v. Walker, 15 Ga. 457; Banzer v. Banzer, 10 Misc. (N. Y.) 24; In re Kimball, 20 R. I. 619; Pillow v. Rye, 1 Swann (Tenn.) 185; Meacham v. Graham, 98 Tenn. 190. The power of appointment by will, mentioned in item 9, in favor of the children of the donees, is argued by appellants to be significant of an intention to remove the estates from the line of descent under the law. And indeed that seems to be their chief

reliance. But really the peculiarity in that clause is apparently out of deference to the Georgia law, under which a widow is heir in common with the child, and so would take half if there were only one child as issue of a donee son. Sec. 2448 (3), Code of Georgia; Gibbon v. Gibbon, 40 Ga. 575. (2) Item 10 of the will did not impose any disability upon John or Henry or Holcomb Moore, nor was it any obstruction to the conveyance of their estates to Davis by their deeds under which respondents took paper title. That item did not create any active trust in Armor, and the estates referred to must necessarily have vested at once under the Statute of Uses, for all that is provided therein. No trust duty is required of or trust power even permitted to Armor; but lest he should assume some attitude inconsistent with the "largest enjoyment" of the respective estates by their owners, he is enjoined to "give" such enjoyment. But the law gave that anyway, as inherent in the owners of the estates devised. In order to erect a trust estate, "the testator must adequately indicate his intention to create a trust by using language sufficient to sever the legal from the equitable estate." Gardner on Wills, pp. 140, 533; In re Soulard's Estate, 141 Mo. 642. Where the Statute of Uses is in force, a passive or dry trust will be executed so as to vest the entire legal and beneficial interest in the beneficiary. Gardner on Wills, sec. 140, p. 540; Corby v. Corby, 85 Mo. 371; Peugnet v. Berthold, 183 Mo. 61; Carter v. Long, 181 Mo. 701; Pugh v. Hayes, 113 Mo. 432; Walton v. Drumtra, 152 Mo. 489. (3) Even if it could be truly said that, in the first instance and by the terms of the will, the testator's children took only life estates, by reason of item 9, yet that item does not purport to affect the estates devised to the wife, who undoubtedly then took the fee simple in the Missouri land as devised to her, which has passed to defendants. And that indisputable fact seems to us big with significance, considering the in-

tention of the testator to effect a general equalization of the devises to wife and children, each to account for all advancements at fixed values of the properties, in computing the equalizing contributions. It is incredible that the younger children should take only life estates, as against previous money advancements to the older daughters, and as against the fee simple given to the wife as one of the devisees, she being also one of the heirs under the Georgia statute (sec. 2248), and yet be thought equally provided for. The will of Mrs. Green Moore (Eliza) passed all the devised lands not already conveyed by her to John Moore. (4) If we assumed that John Moore, or other devisees who joined in the deeds to Davis in conveying these lands, had only a life estate therein when the deeds were made, but afterwards acquired the mother's fee estate by will or inheritance, or came into Henry's estate therein by will, or under item 9 of the will by reason of his death without issue; yet the deeds to Davis were effective to convey and did convey all such after-acquired estates to Davis or his grantees; and the heirs and privies of the granting devisees are estopped to deny that fact. Gillispie v. Schuman, 62 Ga. 252; Jackman v. Jackman, 73 S. W. (Ky.) 776; Chew v. Kellar, 171 Mo. 215; R. S. 1899, secs. 4590, 4591, and 907; Hume v. Hopkins, 140 Mo. 65; Boyd v. Hazeltine, 110 Mo. 203; Cockrill v. Bane, 94 Mo. 444; Garrett v. Christopher, 15 Am. St. Rep. (Tex.) 850; Callahan v. Davis, 90 Mo. 78; U. S. v. Land Co., 148 U. S. 45; Ryan v. U. S., 136 U. S. 68; 9 Am. and Eng. Ency. Law, 129 n.1; Van Renselaer v. Kearney, 11 How. (U. S.) 297; Taggart v. Risley, 4 Ore. 235; Salem v. McCourt, 26 Ore. 103; Green v. Niver, 43 S. C. 370; Potts v. Dowdall, 11 Am. Rep. (Del.) 757; Moore v. Crawford, 130 U. S.; Bigelow, Estop., secs. 394-7, 365. (5) The deeds by the donees under the will to Davis were effective to convey any after-acquired titles not owned by them at the time; and

this seems to be true under the express wording of the Missouri statutes, not heretofore duly considered by this court, as to married women. Even the married women and their privies should, under our enabling acts, be estopped from claiming as against their own deeds of absolute conveyance. R. S. 1899, sec. 4591. A married woman may be estopped by a deed though it contain no warranty of title. King v. Rea, 56 Ind. 1; Beal v. Beal, 79 Ind. 284; Bush v. Piersol, 183 Mo. 500; Barker v. Circle, 60 Mo. 258; R. S. 1899, sec. 901; 2 Bish. Mar. Wom., sec. 493; Bodine v. Killen, 53 N. Y. 93.

FOX, J.—This cause is now pending in this court upon appeal on the part of the plaintiffs from a judgment of the circuit court of Newton county, Missouri, dismissing plaintiffs' petition and awarding costs against them.

This suit is predicated upon the provisions of section 650, Revised Statutes 1899, and it is sought by this action to ascertain, define and determine the title of both plaintiffs and defendant in and to a tract of land located in Newton county, Missouri.

The plaintiffs claim title to an undivided one-half interest in the land involved in this controversy. It is conceded that the defendant is the owner of the other one-half interest. The land is situated in the county of Newton, State of Missouri, and described as follows: The south half of the southeast quarter and all of the southwest quarter of section one in township twenty-six and range thirty. This land was owned jointly by Charles A. Davis and Green Moore, being patented to them by the United States. The plaintiffs are the children and grandchildren of Green Moore, deceased, and claim his half of the land, subject to the life estate, which defendant has acquired, created by Green Moore's will.

Green Moore died in 1872, at Greensboro, in the State of Georgia, where he had long resided. He left a will which was duly executed, proved and admitted to probate in the court of ordinary, the court of probate jurisdiction, in Green county, Georgia, the county of his residence and death, at the August term, 1872. A duly certified and authenticated copy of this will and the probate thereof was recorded in Newton county, Missouri, on October 15, 1873, and again on March 17, 1884. The will of Green Moore furnishes the common source of title as to a one-half interest in the land in dispute. The proper interpretation of the will of Green Moore is the main proposition presented to this court for its consideration; hence it is well that such will be reproduced in full. It is as follows:

"*Georgia, Greene County.*

"In the name of God: Amen. ·

"I, Green Moore, of said county and State, being of sound and disposing mind and memory, do make, publish and declare this my last will and testament, hereby revoking all other wills heretofore published by me.

"ITEM 1ST.

"I wish my executors to discharge all debts which I may justly owe at my death.

"ITEM 2ND.

"In consequence of the affliction of my son, Henry Antoine Moore, whereby he is not so well fitted as my other children to struggle with the world I think I ought to make a difference in his favor between him and my other children in the distribution of my property. I therefore give and devise unto my said son all of my right, title and interest in the mill property on the Oconee river, now jointly owned by James B. Park, James N. Armor and myself, with all of my rights, title and interest in the lands adjacent to said mills up and down the river so far as the land and water-power of said company extends with my interest

in the ferry, mill seat and every other right, member and appurtenance to the same in anywise belonging, subject to the following exception, limitations and conditions, to-wit: That if it is practicable to use the water-power of said company for any other purpose without injuring the mills now running or which may be hereafter put up on the same sites, then so much of said water-power as may be so diverted is excepted out of the devise and gift made in this item and shall go to my son, John Whitfield Moore. I further give and devise unto my said son, Henry Antoine, my Furlow place containing three hundred and twenty-four acres which I estimate to be worth eight dollars per acre, and I give and devise my said son, Henry Antoine, my Walker place which I estimate at five dollars per acre. I also give and bequeath unto my said son last named, one good mule, two good cows and calves, one feather-bed and bedstead, my gold watch and one thousand pounds of pork.

"ITEM 3RD.

"I give, devise and bequeath unto my son, John Whitfield Moore, my Cunningham place on the road to the ferry, containing four hundred and thirty-five and one-half acres of land, also so much of my land adjacent thereto as I may have cut off by recent survey containing four hundred and thirty acres. I estimate the land of the Cunningham place to be worth twelve dollars and the land included in said survey to be worth five dollars per acre. I also give and bequeath unto my said son one good mule, two good cows and calves, a feather-bed and bedstead and one thousand pounds of pork.

"ITEM 4TH.

"I give and bequeath unto my beloved wife, Eliza L. Moore, the house wherein I now reside, also two hundred acres of land to be laid off around it so as not to interfere with any other devise in this my will. I

also give and bequeath unto my said wife two good mules, two good cows and calves, one feather-bed and bedstead and one thousand pounds of pork. I further will and direct that my said wife shall have all of my household and kitchen furniture during her life and at her death that the same shall be divided amongst my children share and share alike.

"ITEM 5TH.

"I give and devise unto my daughter, Ann Fannie Elizabeth Adams, the place in Putnam county known as the Ross place, containing twenty-five hundred and fifty acres, on which she now resides, and I count it to be worth ten thousand dollars.

"ITEM 6TH.

"I give and devise unto my grandson, Holcomb G. Moore, the place known as the Collier place, that is to say so much thereof as lies north or north-western of a line to be run between a post-oak in the grave-yard field of Crawford Perdue, running westwardly to a branch on the Furlow place and down the branch until it reaches a white oak, an original corner tree on the Clough place or Furlow place. I also devise him one hundred and forty acres of land which I bought of Dr. Moody.

"ITEM 7TH.

"I have given my older children, to-wit, Adrianne W. Armor and Sarah Lee Harwell, as follows, to my daughter first named: Three thousand dollars in money and property and to my daughter last named, twenty-four hundred dollars. My purpose in this will, subject to the exceptions hereinafter mentioned, is to equalize my children so far as I can do so, in the distribution of my property and to that end I direct that in the division of the residue of my estate each child shall be made to account for all the property given him or her herein, or in any other way as advancements at the estimates made by myself and that my wife shall account likewise before sharing in the said residue. I

except from the general rule of equality the cases of my son Henry Antoine and John Whitfield Moore and direct that the mill property and water-power herein given them may be had by them over and above a share of my estate.

"ITEM 8TH.

"All the rest and residue of my estate not herein devised and bequeathed specifically I direct shall be shared by my children and wife, not including my grandson, Holcomb G. Moore, subject to the provisions of the 7th item of this my will.

"ITEM 9TH.

"Upon the death of my children without issue I direct that the share of such child shall revert to my estate and be divided equally amongst my surviving children and the children of such of my children as may be deceased, share and share alike. Upon the death of any one of my children leaving issue I direct that the property herein given to such child shall go to his or her children, and wife in case of a son, in such parts and proportions as he or she may direct by last will and testament, provided no wife of any son or grandson so dying shall take more than a child's share under any such will.

"ITEM 10TH.

"I direct that the property herein given, devised and bequeathed to my sons, Henry Antoine, John Whitfield and my grandson, Holcomb G. Moore, shall be held by them and each of them, subject to the direction and control of my son-in-law, James N. Armor, until they each attain forty-five years of age, and I hereby commit the same to my said son-in-law, in trust, for the use and benefit of my said sons and grandsons, respectively, for the terms above stated, directing him hereby to give each of two sons and grandsons, the largest enjoyment of the property aforesaid consistent with its preservation.

"ITEM 11TH.

"What I have given herein to my wife, Eliza L. Moore, is in lieu of dower of every other provision made by law for widows.

"In witness whereof I have hereunto set my hand and seal this 10th day of August, 1871.

"(Seal.)                                    GREEN MOORE.

"Signed, sealed, published and declared as his last will and testament on the day and year above written in our presence as witnesses who subscribed the same in his presence and in the presence of each other.

"JAS. B. PARK,
"L. C. PERDUE,
"JUNIUS WINGFIELD.

"I, Green Moore, having made and published the foregoing as my last will and testament do make, publish and declare this as a codicil thereto. In item 2nd of my will I give to my son, Henry Antoine, my Walker place; but I only intended to give him so much thereof as lies west of the road leading from Greensboro to Park's Ferry except the part cut off in the survey made by J. F. Wright to my son, John Whitfield. I give and bequeath to my daughter, Sarah Lee Harwell, my Rowland place and my Wade land which I estimate at six dollars per acre, subject to the provisions of the seventh item of my will.

"I hereby appoint my son, John Whitfield Moore, and my sons-in-law, James N. Armor and James M. Harwell, my executors of this my last will and testament. In witness whereof I have hereunto set my hand and seal this 25th day of June, 1872.

"(Seal.)                                    GREEN MOORE.

"Signed, sealed, published and declared as a codicil to his last will and testament by the testator on the day and year above written in our presence as wit-

nesses who subscribed the same in his presence and in the presence of each other.

> "James B. Park.
> "J. F. Billingslea.
> "L. C. Perdue."

There was other evidence introduced in this cause. The defendant introduced a contract between C. A. Davis and Green Moore, of Greene county Georgia, parties of the first part, and Thomas C. Johnson and Sam N. Coleman, parties of the second part, which contract related to the selection and entry of lands on the South West Branch Railroad. There was also offered in evidence a quitclaim deed from John H. Miller and wife to Charles A. Davis, conveying all their title by reason of their contract as above indicated. There was also offered in evidence a deed from the children and heirs of Green Moore, deceased, to Charles A. Davis, dated June 2, 1887, conveying the land in question and other lands, for a consideration of $7000. There was also introduced in evidence a deed dated the 1st day of February, 1884, by the children of Green Moore to C. A. Davis.

We deem it unnecessary to set out in detail the nature and character of the contracts or deeds offered in evidence by the defendant. If necessary we will make such reference to such instruments as we may deem appropriate during the course of the opinion.

It is not essential that we reproduce the petition and answer upon which the judgment in this cause rests. It is sufficient to briefly state that the petition contains two counts. The first count, as heretofore indicated, is predicated upon the provisions of section 650, supra. The second count is one in ejectment. At the close of all the evidence introduced in the cause the plaintiffs voluntarily dismissed their suit as to the second count of the petition, that is, the one in ejectment; and the cause was submitted to the court upon the first count of the petition, being the one by which it was sought

to have the court ascertain, define and determine the title of the parties to this proceeding in the land in controversy.

The record discloses that on May 2, 1905, being the April term, 1905, of said Newton County Circuit Court, the court having said cause under submission, proceeded to render judgment, but did not by such judgment undertake to define and determine the title to the land in controversy between the plaintiffs and defendants, as is contemplated by the provisions of section 650, nor did such court undertake to define the right, title and interest of any of the parties to such land, but simply dismissed plaintiffs' petition and rendered judgment for the defendant, awarding costs against the plaintiffs.

Timely motions for new trial and in arrest of judgment were filed and by the court taken up and overruled. From the judgment rendered in this proceeding the plaintiffs, in proper form and in due time, prosecuted their appeal to this court, and the record is now before us for consideration.

OPINION.

I.

Section 650, Revised Statutes of 1899, provides that: "Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property."

Manifestly the trial court did not enter the decree as contemplated by the provisions of that section. If the abstract of record discloses the only judgment and decree that was entered in this proceeding, then it is clear that the court did not, as contemplated by the provisions of section 650, supra, undertake to ascertain and determine the estate, title and interest of such parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property. The record in this cause discloses that the only judgment or decree entered was that the cause "being submitted to the court, and the evidence being deduced by the several and respective parties, the court thereupon finds the issues for the defendant. Whereupon the court doth consider and adjudge that the plaintiff take nothing by its petition or action herein, but that defendant have and recover of and from the plaintiffs and their sureties for costs herein . . . and that defendant go hence without day."

Manifestly this judgment does not follow the provisions of the statute. While the record leaves it somewhat in doubt as to the theory on which the court entered its judgment, yet it is apparent from the oral argument, as well as the briefs of learned counsel on both sides of this case, that the judgment by the trial court was predicated upon the overshadowing proposition disclosed by this record, that is, of the proper interpretation of the will as executed, published and declared by Green Moore, deceased, and that the judgment of the court was upon the theory that the devisees in such will, by virtue of its provisions, took an absolute estate in fee in the lands in controversy, and that the defendant acquired the legal title to such land by mesne conveyances from the owners thereof.

It is obvious that counsel for appellants, as well as counsel for respondent, being present and actively participating in the trial of this cause in the lower

court, are thoroughly familiar with the theory upon which the case was there decided. Counsel for appellants, in their original brief, confined their discussion exclusively to the main proposition, that is, as to the proper interpretation of the will of Green Moore, deceased, and in their reply brief they say that they did this upon the theory that it was not necessary to discuss the effect of the deeds of the life tenants under which defendant claims title as conveying their after-acquired title, as well as the question of the Statute of Limitation, for the reason that the lower court did not pass on those questions. This statement by appellants' counsel is not controverted by the learned counsel for respondent. While it may be conceded that in effect the judgment in this case was a finding that the plaintiffs did not have any title to the real estate in question, and that the defendant had such title, yet clearly such judgment falls far short of defining and adjudging by an appropriate decree the title, estate and interest of the parties to this controversy. As applicable to this case, we merely suggest that if the trial court, upon the issues presented, found that the plaintiffs had no title or interest in such real estate it should have been so stated in the decree, and if the court found that the defendant had the legal title to the land in controversy, then it was the province of the court not only to adjudge, but as well to define by its decree the title, estate and interest of such defendant.

In view of the disclosures of this record we shall confine our consideration to the main proposition, that is, the proper interpretation of the will involved in this proceeding. If upon final conclusion we should hold that the provisions of this will vested in the devisees therein mentioned an estate in fee, then the judgment of the trial court should be affirmed, but if on the other hand we should reach the conclusion that such devisees only acquired a life estate, then the judgment of the trial court should be reversed and the cause re-

manded. At least we feel that if the latter conclusion should be reached it would be much more satisfactory to this court to give the parties, as well as the trial court, an opportunity of working out, as suggested by counsel for appellants, the details as to the respective interests of the parties to this controversy, and defining by an appropriate decree such interests.

We will now direct our attention to the interpretation of the instrument before us which is at the foundation of this legal controversy between the appellants and the defendant.

The contentions of learned counsel representing appellants and respondent have heretofore been indicated; however, it is well that such contentions may be kept in view, therefore we again restate them:

On the part of the appellants it is earnestly insisted that the will of Green Moore, deceased, when all of its provisions are considered, limited the estate devised to the devisees therein mentioned to that of a life estate. On the other hand, with equal earnestness, it is insisted that when all the provisions of that will are fully considered the intention of the testator is made manifest to vest in the devisees an estate in fee simple. This is the proposition confronting us and its solution must be sought by a fair and reasonable application of the rules of law applicable to the interpretation of instruments of that character.

It has been said by this court that "it is rare that you find two wills using the same language and the testator surrounded by the same conditions;" hence it follows, that the language used is one of the controlling features, must be given most careful and earnest consideration.

At the very inception of the consideration of the legal propositions involved it is not out of place to say that the briefs of counsel now before us have said about all that can be said upon the question now under consideration. There is no case that was ever presented

to this court in which there has been a more thorough and careful collation of all the authorities applicable to the subject before us than in the one at bar. It is sufficient to say that we have carefully reviewed all of the authorities to which reference has been made; however, a reasonable limit to this opinion will prevent a review of such authorities.

This subject is by no means one of first impression in this court. In fact, there is no question which has been in judgment and had the attention of this court more frequently than the one now before us, that is, construing the language of a last will. The rules of interpretation of the provisions of last wills are so well defined and have been so frequently invoked that it seems hardly necessary to refer to them. Respecting the duty of the courts as to the interpretation and constructions of language used in last wills, section 4650, Revised Statutes 1899, furnishes the rule. That section requires that "all courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them."

At the very inception of the discussion of the proposition now confronting us it is well to recall some of the cardinal rules in the interpretation of instruments of this character.

First: The intention of the testator must be ascertained from the whole instrument.

Second: The words used are to be understood in the sense indicated by the whole instrument.

Third: That it is the duty of the courts in the interpretation of last wills to give effect, if possible, to all the clauses of the instrument. In other words, where it is possible to do so, every clause in a will shall have some operation and be effective for some purpose.

We have reproduced the respective items of the will involved in this controversy, and it must be con-

ceded that the devises made by the testator in the respective items to his children need no additional words, such as "their heirs and assigns forever," or "the power of absolute disposal," or any others of like character, in order to vest in such children an estate in fee. As applicable to that subject, section 4646, Revised Statutes 1899, very clearly furnishes the rule. It provides: "In all devises of lands . . . in which the words 'heirs,' etc., are omitted, and no expressions are contained in such will whereby it shall appear that such devise was intended to convey an estate for life only, and *no further devise be made of the devised premises,* to take effect after the death of the devisee to whom the same shall be given, it shall be understood to be the intention of the testator thereby to devise an absolute estate in the same, and shall convey an estate in fee simple to such devisee, for all such devised premises." However, it must not be overlooked that this statute recognizes that a devise over might be made by the testator limiting the estate to the first taker to that of a life estate; for in such statute it is in substance said that if no expressions are contained in such will whereby it shall appear that such devise was intended to convey an estate for life only, and no further devise be made of the devised premises to take effect after the death of the devisee to whom the same shall be given, from this it shall be understood to be the intention of the testator thereby to devise an absolute estate. Manifestly, this statute, when properly analyzed, means that if expressions are embraced in the will whereby it shall appear that such devise was intended to convey an estate for life only and a further devise be made of the devised premises to take effect after the death of the devisee, then the intention of the testator to devise an absolute estate in fee simple to the devisee will be negatived and the estate devised limited to that of a life estate.

The basis of this controversy applicable to the proper construction and interpretation of the will of Green Moore, deceased, is predicated upon the provisions of the 9th item in the will of Green Moore. It is well to keep in view the provisions of that item. It provides that "upon the death of my children without issue I direct that the share of such child shall revert to my estate and be divided equally amongst my surviving children and the children of such of my children as may be deceased, share and share alike. Upon the death of anyone of my children leaving issue I direct that the property herein given to such child shall go to his or her children, and wife in case of a son, in such parts and proportions as he or she may direct by last will and testament, provided no wife of any son or grandson so dying shall take more than a child's share under any such will."

It will be observed that under the previous items, in which the devises are made to the children of Green Moore, there is no power of disposal, absolute or otherwise, but a simple recitation that "I devise" or "bequeath," etc. It will be observed by the provisions of item nine that the testator did not recognize that he had in the previous items made any provision for the right of disposal, for in this item he talks about not what remains of the respective shares devised to his children in the previous items, but plainly makes provisions as to the share of such children as provided for in the preceding items of such will. It is also of significance to note that the provisions of item nine did not leave any uncertainty as to where the testator intended that the share of his children should finally rest. The disposition of the shares of such children is not made to depend upon the single contingency of the death of such children or anyone of them without issue, but it fully covers both contingencies, that is, either dying with issue or dying without issue, and then proceeds with at least apparent and seeming intelligence

to treat the subject of the disposition of the shares of his children which had previously been provided for to meet either of the contingencies mentioned in item nine.

Upon this item it is well to state and keep in view the contentions of the opposing counsel in this controversy. Appellants insist that this item is not in any way inconsistent or repugnant to the other provisions of the will; that from its provisions it is clear that the testator intended that his children, as designated in the previous items of such will, should only take a life estate, and that the provisions of such item should be given full force and effect in the interpretation of the instrument now before us. On the other hand respondent insists, first, that item nine did not operate to restrict, limit or diminish the estates devised by the eighth item; second, that item nine is void for repugnance to the direct and positive gift by the unlimited terms of the other items.

We have examined the authorities so fully and carefully collated applicable to this subject and have carefully considered the strong and able presentation of the law by the learned counsel engaged in this legal contest, and we see no reason for further delaying our conclusions upon the proposition deduced from a full consideration of the subject. In our opinion, the ninth item in the provisions of the will of Green Moore clearly manifested the intention of the testator to limit the estate of his children devised in other items of such will to that of a life estate. It is clear that to hold that this item in the provisions of this will should be eliminated, would not only be violative of the manifest intention of the maker of such will, but would as well be ignoring the plain provisions of section 4646, Revised Statutes of 1899. That statute, as heretofore pointed out, fully recognizes that a devise, which if standing alone should be construed as an absolute estate in fee simple, might be limited to a life estate by the use of

expressions in the instrument which made it appear that such devise was intended to convey an estate for life only, or by making a devise over of the devised premises to take effect after the death of the devisee first named.

When all of the provisions of this will are fully considered, in our opinion, it materially relieves the difficulty in the interpretation of the language used, as well as in arriving at the true intent of the testator in the disposition of the property embraced in such will. The devise to the children of the testator in the items preceding the ninth item was general in its terms. It certainly will not be seriously contended that the testator, in a subsequent clause of his will, could not, by appropriate language, modify and limit the nature and character of the estate devised by such terms. There is no dispute as to the general rule announced in the early case of Gregory v. Cowgill, 19 Mo. 415, that the devise of an estate generally or indefinitely, with a power of disposition over it, carries a fee, but in Wead v. Gray, 78 Mo. 59, referring to the case of Chiles v. Bartleson, 21 Mo. 344, it was said, speaking of the will in the Bartleson case, that "by one clause of the will, certain property was given to the wife—no power of disposition expressed, and no words declaring the extent of her estate; but, by a subsequent clause, the property given to her, not what might remain, but the identical property, was, at her death, to be equally divided between the testator's four children. It is clear enough that the wife took but a life estate." So it may be said in the case at bar, that the children of Green Moore, deceased, in the items of the will preceding the ninth item, were given certain property, and it must be observed in that devise, as in the case last cited, there was no power of disposition expressed, and there were no words declaring in terms the extent of the estate. From this it logically follows that if the rule announced in Wead v. Gray, in commenting upon the case

of Chiles v. Bartleson, 21 Mo. 344, announced the correct rule as applicable to that subject and is longer to meet the approval of this court, then if item nine in the will of Green Moore made a devise over upon the death of each and all of his children who might die with or without issue, of the shares given to them by the previous items in such will, then, as was said in the case last cited, it is clear that his children took but a life estate.

The terms used in item nine manifestly were not employed without some consideration. Analyzing the language employed in that item by the testator we see no escape from the conclusion that he intended to limit the shares of each and all of his children to that of a life estate. Presumptively, at least, the testator knew not only the terms used, but the force and effect of such terms in the devises made to his children by the previous items. This being true, if the testator did not intend to limit such devises to those of life estates, but intended that such devises should be treated as conveying an absolute estate in fee simple, then we are unable to comprehend why he should by item nine give explicit directions as to what disposition should be made, not of the remaining property of such children undisposed of, but of the identical property embraced in the shares given them after their death, either with or without issue. He expressly directed that the shares of the children who died without issue should revert to his estate and be divided equally amongst his surviving children and the children of such of his children as may be deceased, share and share alike. In the disposition of the shares of the children who might die with issue the testator was still more explicit, indicating very clearly that he had the subject in hand and that he was possessed of full knowledge of it. In the disposition of those shares he gave to the children a limited power of disposal, that is, that the shares of such children as might die with issue "shall go to his or her

children, and wife in case of a son, in such parts and proportions as he or she may direct by last will and testament, provided no wife of any son or grandson so dying shall take more than a child's share under any such will.''

While it is true that the will of Green Moore, deceased, did not in express terms create in his children a life estate, in our opinion unless the provisions of item nine are entirely eliminated from this will, there can be no escape from the conclusion that the terms used and the devise over in such item of the will created, by necessary implication, a life estate, and that such was the intention of the testator is made clearly manifest by an analysis of the terms employed in the ninth item, by which in no uncertain terms he directed in detail the disposition of the shares of such children who might die with or without issue.

As heretofore indicated, the statute recognizes that an absolute estate might be limited in express terms to a life estate, and that it might also be limited to a life estate by the necessary implication of the terms of the grant. This rule interpreting the meaning of our statute was clearly announced in Cross v. Hoch, 149 Mo. 325. In that case it was insisted that under the facts developed if a life estate was intended it should have been made to appear by express language in the grant. This court, in responding to such insistence, said: ''It is argued that he [testator] knew how to create a life estate, for he had done so in providing for his wife, and that if he had intended that Sarah should have only a life estate he would have employed the same express language in making the bequest to her. This would be true if the law required that a life estate could only be created by the use of the express term 'life estate.' But such is not the law. The same intention may be expressed in any appropriate, equivalent words, and section 8834, Revised Statutes 1889 (sec. 4590, R. S. 1899),

distinctly makes provision to the same effect, for it says: 'Every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant.' Thus the statute recognizes that an absolute estate may be limited in express terms to a life estate, and that it may also be limited to a life estate by the necessary implication of the terms of the grant. This is not only the statute law of the State, but the same rule has become thoroughly imbedded in the jurisprudence of the State, by judicial interpretation."

In Walton v. Drumtra, 152 Mo. 489, this court, speaking through Judge Burgess, fully recognizes the cardinal rule that the intention of the parties to an instrument is to be ascertained by considering all the provisions of it, and that the intention of the parties, when ascertained, must be given effect, if practicable, when not contrary to law. The court in that case had in judgment the interpretation of a deed, but it was said that the same rule applied to the construction of a will. It was also fully recognized in that case that it was no longer necessary in this State that the life estate should be created by express words, as had been ruled in an early Massachusetts case, but if it is the clear intention from the whole will that the first taker is to have but a life estate, the added power of disposition will not convert it into an absolute ownership.

In Bean v. Kenmuir, 86 Mo. 666, this court had in judgment the interpretation of a deed. The deed involved in that proceeding was a grant to the wife, but there was no power of disposal granted to her further than would follow from the grant of the fee to her. This court, in treating of such deed, said: "The deed in question does not, by express words, vest a life estate only in Neamie J. Talley, nor does it give a distinct or express power of disposition. . . . A power

of disposition, such as is needful to defeat the limitation over to the husband, should appear, we think, in more express terms.'' In that case there was a divided court upon the propositions involved, and GANTT, J., in a separate concurring opinion in Walton v. Drumtra, supra, in commenting upon the case last cited, said: ''The conclusion is inevitable that the majority of the court would have concurred with the minority in that case, had the power of disposition by the wife been given in express words.''

To the same effect is Roth v. Rauschenbusch, 173 Mo. 582. The rule to which reference has heretofore been made was again announced in that case, that a life estate need not be created by express words, but if it is the clear intention from the whole instrument that the first taker is to have a life estate the added power of disposition will not convert it into a disposition of absolute ownership.

In Bean v. Kenmuir, supra, it was recited in the deed by the grantor that he had ''granted, bargained and sold, and by these presents do grant, bargain and sell unto the said party of the second part'' (who in this case was a married woman), ''for her sole use and benefit, the following described real estate.'' Then follows the description of the property. Then follows the *habendum* clause, ''To have and to hold the said tract, pieces, or parcels of land, together with all the rights, privileges and appurtenances thereto belonging, or in anywise appertaining to the said party of the second part, her heirs and assigns forever.'' Then follows this clause: ''And in case of the death of the said party of the second part, then said property, with all the rights and privileges therein, shall pass to the husband of Neamie, William W. Talley.'' This court, in treating of the clause in said deed, said: ''The granting clause of the deed in question contains the words 'grant, bargain and sell,' which, in the absence of other clauses restricting, limiting, or modifying the same,

would, under our statute, constitute a deed of warranty with full express covenants, and, as said by counsel, if the deed in question stopped here, it would, when duly signed and sealed, have conveyed the fee. But the deed does not stop here. The clause above quoted is added and we are asked to adjudge the limitation over void, and to hold that, by the deed, it was the intention of the grantor to vest the fee in her daughter, free from the control of her husband.'' The court, in further discussing the clause in this deed, used this very appropriate language: ''Now, if the intention of the grantor was to convey an estate in fee to the daughter, why was such a clause [referring to the clause in the deed as to the disposition of the property after the death of the wife] with such a provision, inserted in the instrument? It was unnecessary, and worse than idle, for any such purpose. The significance and import of these words in the grant, cannot, we think, be overlooked. Nor can they be disregarded unless they plainly contravene some settled rule of law which requires us to reject them.''

So it may be said in the case at bar. If the testator, Green Moore, now deceased, intended in the items of his will preceding the ninth item to vest in his children an absolute estate in fee simple to the shares of his property so distributed in such items, in the language of the last case cited, why was the ninth item with the provisions embraced therein inserted in the instrument? If he intended to give to his children in the preceding items an absolute estate, then, as was said by this court, the provisions of item nine were unnecessary and worse than idle.

We fully agree with the court in its final analysis of the clauses in the deed involved in the case last cited. So we say, as applicable to the case at bar, as was said in that case, that the significance and import of the language used in the ninth item of Green Moore's will cannot and should not be overlooked. Nor can the pro-

visions made in such item of the instrument be disregarded, unless they plainly contravene some settled rule of law which requires us to reject them.

It is not out of place to call attention to the importance and significance attributed by this court in the adjudicated cases to provisions in deeds and wills embracing the power of disposition of the property granted. It will be noted in the case in the 86th Mo. (Bean v. Kenmuir), in treating of the nature and character of the power of disposal necessary to defeat the limitation of an estate to an estate less than that contained in the grant, it was plainly pointed out that "a power of disposition such as is needful to defeat the limitation over to the husband, should appear; we think, in more express terms." It was also suggested in that case that the "rules of interpretation, formerly adhered to with much strictness, have been changed, or modified, or abandoned, when, in their modern applications, they have been found hostile to the end the courts struggle to attain, which is to give effect to the grantor's intention, and to effect which they make it the paramount rule to read the whole instrument, and if possible, give effect and meaning to all its language."

In Shorr v. Carter, 120 Mo. 409, this court, speaking through Judge Burgess, unqualifiedly approved the case of Chiles v. Bartleson, 21 Mo. 344. Reference was made in that case to the case of Chiles v. Bartleson, and it was pointed out that the clause of the will did not create in express terms a life estate in the wife. In commenting upon the clause in the will in the Bartleson case, it was said: "It was held that the intention of the testator manifestly was to give the land to his wife during her life only, with remainder to his children. It will be observed that the third section of that will gave the personal and real estate to the wife without saying *during her natural life,* while the eighth section provides that the bequests made to the wife, at her death, be equally divided among the testator's four

children; yet it was held that the wife only took a life estate in the land.''

The will in the Shorr case, 120 Mo. 409, made this provision: ''I give and bequeath to my beloved wife, Regina Schorr, all my right, title, claim and interest in three certain tracts or parcels of land [describing same and personal property] and all mixed property whatever I may be possessed of at the time of my death; and after my death, all real, personal and mixed property of whatever she, the said Regina Schorr, may be possessed of at the time, shall be equally divided between my next relations and her next relations or heirs.'' In the discussion of the provisions of that will it was said by this court: ''In construing a will, all of its provisions should be taken together and effect given to every clause of it, and the words used so construed as to meet as near as possible the intention of the testator.'' Further discussing the propositions involved in Schorr v. Carter, the case of Morrison v. Thistle, 67 Mo. 598, was cited with approval, and a quotation from that case was indulged as applicable to the subject of ascertaining the intent of the testator, wherein it was said: ''Equity looks to the intention and will glean it, if possible, from the four corners of the instrument, and will not allow such intention to fail by reason merely of the accidental mislocation of the words designed to impress the estate conveyed with a particular character, and thus effectuate a specific purpose. . . . But the rule is to give, if it may be, to every word in the writing its appropriate meaning, and not to suffer the very intention to be defeated, although it is unequivocal and manifest, by a hairspun, technical construction of the instrument.''

In Harbison v. James, 90 Mo. 411, it was held that a will which gave to the testator's widow all of his property, real or personal, with power to sell and reinvest, as she might desire, any part of the same for her separate use and benefit, and any portion of the

estate remaining undisposed of at her death, to his three daughters, created in the widow a life estate, with power to use the principal, if necessary, for her support, and the remainder, if any, at her death went to the daughters.

In Munro v. Collins, 95 Mo. 33, the provisions in the will were: "I will and bequeath to my wife, Mary Hardesty, all the estate, real, personal and mixed, of which I may die seized, to be held and enjoyed by her as her own, with this request, that the real estate shall be properly cared for, buildings kept in repair, and taxes promptly paid; and, after her death, such of said property as shall then be in her possession, I request shall be given to our adopted daughter, Helen Hause, to be hers absolutely, and in the event of her marriage, to be held and enjoyed by her absolutely, and free from the control or interference of her husband, and not liable to any debts or contracts of said husband. In the event of the death of said adopted daughter before my wife, the above request, in reference to the disposition of my property after my wife's death, need not be carried out towards her legal representatives, the *bequest* extending only to such daughter, unless my wife shall so elect. If said Helen should die leaving a child or children, then I request that such of said property as shall be left after the death of my said wife shall go to such child or children in equal parts. And in the event of the death of both my wife and said Helen, leaving no children, then I direct that such of said property as shall be left shall be divided between the different orphan asylums in St. Louis in equal parts." It was held that, by the will, the wife took only a life estate in the property with remainder over absolutely to his adopted daughter, she surviving the wife.

Judge BURGESS, in his final analysis of the provisions of the will in Schorr v. Carter, supra, said: "There is no substantial difference in the provisions

of the will in the case in hand and the provisions of
the wills in the Chiles, Harbison and Munro cases, and
it should, we think, be governed by the same rules of
construction laid down in those cases.''

In Cross v. Hoch, supra, 149 Mo. l. c. 332, the tes-
tator gave all the property to his wife during her life,
and then added this clause: ''It is my will that after
the death of my wife my property be divided in the fol-
lowing manner: . . . To my daughter Sarah Cross
and her heirs I give the west half, etc., provided that
the property here devised to Sarah Cross be subject
to the trust, care and control of my son, Turner Mad-
dox, for her use, and should the said Sarah Cross die
without children, then said property shall be divided
among my other daughters, and if any of ——— be
dead, to their children such portions as their mother
would have been entitled to agreeably to this provision.
And should any others of my daughters die without
children, then their portions are to be divided as pro-
vided for in case of my daughter Sarah Cross.'' The
court held that this conveyed only a life estate in trust
for Sarah Cross. ''The testator must be held to have
carved out a life estate for his wife in express terms,
and a life estate for his daughter, Sarah Cross, by
*necessary implication* from the terms of the grant, and
one is as effectual under the statute and the decisions
referred to as the other.''

''Where no definite estate is, in terms, given to
the first taker, a limitation over upon his death is
steadily construed as indicating an intent that such
taker shall have a life estate, and such will be the result
when an estate is given to the first taker and his heirs,
when the plain intent is to confer a life estate, and not
to attempt a limitation over a previously created fee.''
[Gardner on Wills, sec. 124, page 473.]  The learned
author cites in the notes in support of the rule an-
nounced in the text, Cross v. Hoch, 149 Mo. 325; Schorr

v. Carter, 120 Mo. 409; Harbison v. James, 90 Mo. 411.

In Dozier v. Dozier, 183 Mo. 137, the court had in judgment before it the interpretation of a will giving the property to a trustee for certain persons named, and this provision was added: "And at the death of any one of the beneficiaries, his or her descendants shall be entitled to their interest in said shares or their proceeds, or in the property in which said proceeds may in the meantime have been reinvested, divested of this trust." It was then pointed out in that case that in order to ascertain the intention of the testator in making the grant it was not essential in order to create a life estate to use express language. It was said by the court that "the intention to create a life estate is, of course, best expressed by direct words to that effect, but that intention may be manifested by words which lead to that conclusion, but which nowhere use the term 'life estate.' The intention of the testator is as clearly ascertainable from the provisions of the sixth clause as they are from any other clauses of the will. The second and third clauses create a life estate by express terms. The sixth clause [the one under discussion] creates a life estate in the beneficiaries by words equally as clear and plain. . . . To hold that the beneficiary took a fee, as claimed by appellant, it would be necessary to strike out of clause 6 the provision that upon the death of any beneficiary his share should go to his descendants divested of the trust."

The rule as applicable to this subject is very clearly and correctly stated in 30 Ency. of Law (2 Ed.), p. 741. It is there said: "In ascertaining the estate taken, when by the terms of the devise the quantity of the estate is left in doubt, the fact that there is or is not a limitation over is an important consideration in arriving at the testator's true intention. A limitation over is generally held to restrict to an interest for

life an estate in the first taker which is otherwise doubtful. On the other hand, the circumstance that there is no limitation over is a circumstance in favor of construing a devise to be absolute.''

It may be suggested that the power of appointment, that is to say, the power to dispose of property by will conferred on the testator's children, in the case at bar, provided in the ninth item, applicable to those who die with issue, may have some significance in the interpretation of the language used in that item. It is sufficient to say concerning that subject that it is nothing unusual to confer the power of disposition of property by will upon a life tenant of the land in question. ''The power to dispose of property by will is most commonly given to a life tenant of the land in question. This power may be conferred in terms or by implication.'' [Gardner on Wills, page 552.]

In 24 Ency. Law (2 Ed.), p. 446, the subject of the power of disposal is referred to in the text. It is there said: ''Many cases in the United States hold that an executory limitation is void after a gift with an absolute power of disposal, either express or implied, in the first taker; for the addition of such power makes an absolute interest in the first gift, and the limitation over of what remains, whether expressly or by implication, cannot take effect. But the power of disposal *must be absolute,* and if the first taker's power of disposal is *limited or conditional,* it will not defeat a disposition over.''

Underhill on Wills, section 469, page 623, very clearly and in our opinion, correctly announces the rule as applicable to the power of appointment. This learned author says that ''the doctrine of an estate by implication is applicable to a power of appointment which is to be executed by will in favor of a class. If property is given in general terms to A, with direction that he shall divide the same by will among his children, a life estate arises in A by implication; and

where property is given to a person expressly for life, and after his death to such children, relations or other classes of persons as he may by will appoint, and the person who has the power to appoint fails to exercise it, the property which was to be appointed will go to the objects of the power in equal shares.''

The eighth item of the will of Green Moore, deceased, wherein the devise is made to the children, embraces the land in controversy. We have in the statement of this cause reproduced this item of the will. It is insisted by learned counsel for respondent that there was no sort of limitation in the item, and therefore the estate created in the children was an absolute estate in fee. Responding to this insistence it may be said that there was no limitation indicated in the previous items as to the other property located in the State of Georgia, and manifestly if the ninth item limits the estate to the land and property in Georgia, we are unable to see upon what basis it can be held that the ninth item has no application to the devise in the residuary clause embraced in the eighth item. The eighth item in the will of Green Moore, deceased, embraced at least a part of the shares of his children. The devise to such children in such item used the same general terms as in the previous items, and it is obvious that the devises in all the items preceding the ninth item constituted the shares distributed to the children. It is manifest from the language employed in the ninth item that the testator made no distinction as to the shares of the children devised in the respective items preceding this clause, and it is obvious that, when he said in the ninth item ''I direct that the share of such child shall,'' etc., he contemplated the entire share of each child embraced in all the previous items.

We have indicated our views upon the interpretation of the will of Green Moore, deceased, and in reaching the conclusion we are not unmindful of the many

authorities cited by learned counsel for respondent. We have carefully considered them, and as to the cases cited from the appellate courts of this State, upon which respondent relies, in our opinion they do not conflict in any way with the conclusions reached as indicated in the case at bar. A careful examination and analysis of those cases demonstrate that the facts developed upon the trial, and the provisions embraced in the instruments which were in judgment before this court, clearly distinguish them from the case now in hand.

In Chew v. Keller, 100 Mo. 362, it was there announced, in treating of the provisions of the will in that case by the learned and esteem judge, speaking for the court: "Stronger language could not have been used to show and disclose a purpose and intent to confer upon Levin Baker and the other named persons an absolute and unconditional fee. The estate is given to 'them and their heirs forever.' This expression, though unnecessary to create a fee, is an appropriate one for that purpose." It will be observed that the will involved in that case did not in fact make a devise over as in the case at bar, and in discussing that proposition, it was said by this court: "The testator seems to have supposed it necessary to point out the time when those devisees should enter into and enjoy possession of the property, and this time he fixes at the death of Jemima Lindell [who was the widow and life tenant]. To his mind this was of prime importance, for he fixes the time by stating it in a negative and affirmative form of expression. With this matter made so prominent it was but natural that he should make some provision in case any of the devisees died before the date at which they should take possession, and this, too, without intending to substitute a new class of beneficiaries. "When he says, in case either of them shall die before the life tenant, the heirs of such person so dying shall take his or her portion, he is speaking in affirmation of what he said at the beginning of the

paragraph, where he gave to the named persons an absolute and unqualified fee in remainder. . . . Certain it is we have here a fee created by the use of strong and appropriate words to begin with, and it should not be cut down to a defeasible estate unless the testator has clearly declared that to be his intention.'' It will be observed in that case that the contention of the appellant was, that the proviso in the will providing that in case either of the persons to whom he had devised the estate in language so strong as to indicate an estate in fee should die before the life tenant, Mrs. Lindell, indicated an intention on the part of the testator to bring forward the heirs of such deceased persons to whom the land was granted as substitute beneficiaries in the land granted to such deceased person to whom the grant originally was made. This court in treating of that proposition simply held that taking the entire paragraph of the will together upon that subject it could not be said to have been the intention of the testator to bring forward the heirs of Levin Baker as substituted beneficiaries in case he should die before Jemima Lindell. Under the provisions of the will to which reference has been made, wherein it was provided that if either of the parties should die before the life tenant the heirs of such persons shall take his or her portion, it was simply held that the heirs are only mentioned as taking by descent from their father, and that the will did not contemplate that they were to take as substituted devisees. It is clear that the provisions of the will in that case are in no way similar to the provisions of the will in the case at bar, and the propositions discussed and the conclusions reached fall far short of furnishing support to the contention of the respondent in the case at bar.

Of Small v. Field, 102 Mo. 104, it is sufficient to say that the provisions of the will and the discussion of the propositions involved in that proceeding clearly

distinguish it from the will and the propositions disclosed by the record in the case at bar. It will be noted in that case that there was no devise over, and it was held that the fourth clause of the will vested in the devisee an absolute estate. It will also be observed in that case that in the second clause of that will the testator devised first, by general terms, to his daughter, Kate Greene, wife of Oliver D. Greene, certain property. Following this provision in the last subdivision of the clause it was then provided that at her death the property was to be equally divided between her two daughters, Mary and Kate Greene, and his adopted granddaughter, Medora Annie Rich. It was held that that clause created simply a life estate.

The case of Yocum v. Siler, 160 Mo. 281, is unlike, in its controlling features, the case at bar, and furnishes no aid in the interpretation of the will now under consideration. The testator in that case bequeathed to his son, William Franklin Yocum, absolutely, certain lands, describing them, situate in Platte county, Missouri. In a second subdivision of this clause of the will was added: "If my said son dies without legal issue, descendants of his, legitimate issue of his, said lands shall pass to" certain other parties mentioned. It was held in that case, and correctly so, that in the first subdivision of that clause of the will an absolute estate was created in the son of the testator, and in determining the proposition the familiar and well recognized rule was invoked that "when in the first instance, a fee simple is given by will to the donee, it will not be restricted or cut down to any less estate by subsequent or ambiguous words, inferential in their intent." Reference was then made to section 47 of the chapter on Wills, in the Revised Statutes of 1845, which is substantially the same as our present statute, wherein it was provided that "in all devises of lands, or other estate in this State, in which the words, 'heirs and assigns' or, 'heirs and assigns forever,' are omitted,

and no expressions are contained in such will, whereby it shall appear that such devise was intended to convey a *life estate* only, and no further devise be made of the devised premises, to take effect after the death of the devisee to whom the same shall be given, it shall be understood to be the intention of the testator thereby to *devise an absolute estate in the same,* and shall convey an *estate in fee simple* to the devisee, for all such devised premises." This court, speaking through Judge GANTT, in pursuance of the provisions of the section of the statute just quoted, very appropriately propounded and answered the following questions as applicable to the will which was in judgment before the court in that case. He said: "Did George W. Yocum devise to his son William F. Yocum 'any lands' without using the words 'heirs and assigns' or 'heirs and assigns forever?' Most assuredly he did. Did he use any expressions whereby it appears that he only intended to give his said son a life estate 'only?' Most obviously he did not. Did he, in the language of the statute, make 'a further devise of the devised premises to take effect after the death of the first devisee?' We answer, he did only conditionally, and as that contingency never happened that clause of the will is *wholly inoperative,* and we must construe the writing as if these words had never been superadded, and that the testator made *no further devise* of the devised premises to take effect after the death of his son William F. Yocum, and this being so, must hold that said son took a fee simple as directed by that statute." Clearly that case in the main and most important features is distinguishable from the case at bar. It will be observed that the devise over in that case was, as said by the court, conditional, and rested upon a single contingency which never happened; hence, it followed that that clause of the will concerning that single contingency was inoperative, and it was properly held, in our opinion, that that clause was insufficient to

limit the absolute estate given in the first instance to that of a life estate. In this case the contingency is double—that is, of either dying with or without issue. That most assuredly constitutes a certain event.

The cases of Gannon v. Albright, 183 Mo. 238, and Gannon v. Pauk, 200 Mo. 75, are simply in harmony with and follow Yocum v. Siler, supra. It is sufficient to say of those cases that a careful examination and analysis of them will clearly demonstrate the difference between those cases and the case at bar. In the cases last referred to, cited by respondent, it will be observed that the grant to the first taker was not confined to general terms, but such words as "absolutely and forever," and "heirs and assigns forever" were embraced with the terms of the grant to the donee, and in addition there was at least an implied power of absolute disposal in the first taker, and lastly the devise over in those cases rested alone upon the single contingency of dying with issue, which was fully treated of in Yocum v. Siler, supra.

Many other cases are cited by both appellants and respondents from foreign jurisdictions; however, as heretofore suggested, the reasonable limits of this opinion compels us to decline a review of those cases. We have examined them and have no hesitation in saying that the weight of authority in other states, in treating of this subject, is in harmony with the adjudications of this State to which reference has been made.

We shall not discuss any other subjects which may apparently be involved in this proceeding. In the first instance it is the province of the trial court to ascertain the title of the respective parties in proceedings of this character, and to define by an appropriate decree the interests of such parties; therefore, as heretofore suggested, it would be much more satisfactory to this court before passing upon the question to have a decree in harmony with the provisions of section 650, which

at least with reasonable certainty defines the interests of the parties to this litigation.

We have given expression to our views upon the leading propositions disclosed by the record before us, which results in the conclusion that the judgment of the trial court should be reversed and the cause remanded, to the end that the title of the parties to the land in controversy in this suit might be ascertained and their interests in such lands defined. It is so ordered. All concur.

REVERSED AND REMANDED.