THOMAS W. HOLCOMB, Respondent, v. JOSEPH W. MAYS, Appellant.

Kansas City Court of Appeals, November 10, 1919.

1. **JUDGMENT: Suit to Annul Decree.** Where plaintiff has brought a suit to vacate a sheriff's deed under which defendant claims title and praying for a decree that defendant has no interest or title in the land and for *general equitable relief*, and defendant in his answer alleges that plaintiff claims some right, title, estate, interest or lien in the land and prays the court to ascertain the respective rights of the plaintiff and defendant, whether the action be considered an equitable one to quiet title under Sec. 2535, R. S. 1909, or a mere suit in equity to set aside the sheriff's deed, the plaintiff should have offered evidence in support of an equitable lien and the court should have made, in the absence of such evidence, a finding that plaintiff had no such lien; hence the inclusion of such a finding in the decree affords plaintiff no ground for annulling that portion of the decree so included.

2. ——: ——: **Laches.** Where plaintiff had knowledge that defendant had prepared a form of decree objectionable in the in-inclusion of the purported finding and forgets the matter and allows it to rest during the motion for a new trial and after the term has passed, such neglect is fatal to his right to have the decree modified in a subsequent suit.

Appeal from Buchanan Circuit Court.—*Hon. Thos. B. Allen,* Judge.

167

REVERSED.

*F. W. Paschal* for respondent.

*Warren Rogers* and *Horace Merri.t* for appellant.

TRIMBLE, J.—This is an action in equity instituted July 13, 1918, by plaintiff against defendant to annul a *portion* of a judgment rendered November 12, 1917, in a former suit of plaintiff against defendant.

The former suit was in equity to set aside a sheriff's deed to defendant purporting to convey a residence tract described as Lot twenty-nine and the West eighteen and one-half feet of Lot twenty-eight in Block one, Mitchell T. Thomas' Addition to St. Joseph, and to decree that defendant had no interest in or title to said real estate. Therein plaintiff set up that on the 31st' of January, 1913, C. F. Harris exchanged the equity in his farm for said lots subject to a $1750 deed of trust already thereon to the First Trust Company of St. Joseph, Missouri; that the farm given in exchange for the lots was the homestead of said Harris, and in exchanging said farm for the lots he merely transferred his homestead from the former to the latter, and said lots became his homestead and was exempt from any judgment or executions thereon; that on June 29, 1914, defendant recovered a judgment against Harris for $3827.84; that on November 2, 1914, Harris gave a second deed of trust for $200 on said lots to the Security Bank of St. Joseph; that on October 11, 1915, Harris traded said lots to plaintiff for a certain other residence, and thereby transferred his homestead in said lots to the tract he got from plaintiff, but that it was not until after December 2, 1915, that Harris's deed was delivered to plaintiff; that on said December 2, 1915, the Security Bank foreclosed its deed of trust and *plaintiff* bid in said lots at $293.20 and received a trustee's deed to said lots subject to taxes and the First Trust Company's deed of trust; that on November 29, 1916, defendant

had an execution issued on his judgment against Harris which was levied upon said lots and they were sold at sheriff's sale, the *defendant* buying said property at $400 and obtaining a sheriff's deed therefor; that defendant claimed to be the owner of said lots, but that the lien of said judgment never attached to them as they were Harris's homestead and the sale under the execution passed no title and said Sheriff's deed conveyed no title but is a cloud upon plaintiff's title and defendant is attempting to exercise acts of ownership thereunder. The petition in said former suit closed with a prayer that the sheriff's deed be vacated, and that the court "decree that defendant has no interest or title in and to said real estate *and for general equitable relief* and costs."

The answer in said former suit admitted that Harris became the owner of said lots; that defendant received the judgment alleged, and under it said property was levied upon and sold by the sheriff to defendant who received a deed therefor, and that defendant claimed to be the owner thereof. All other allegations were denied, and the answer then set up facts in support of defendant's contention that Harris had no homestead in the property; that in February, 1917, plaintiff filed a suit against defendant, numbered 29451 wherein he admitted defendant was the owner of the property, and that the sheriff's deed had deprived plaintiff of whatever title he had therein, but sought for plaintiff an equitable lien thereon by way of subrogation for having paid off certain liens on the property while in ignorance of the fact that he did not own the property, by reason of which plaintiff was estopped to deny defendant's ownership.

The answer further alleged that defendant was the owner in fee of the said property claimed by the plaintiff; that the "plaintiff *claims some right,* title, estate, *interest or lien* in, concerning or affecting, or to the said property adverse to this defendant;" that plaintiff had at all times been in possession and denied the defendant

the right to enter; that the rental value was $40 per month and defendant had been damaged by the withholding of possession, after notice to deliver, in the sum of $300. The answer closed with the following prayer:

"Wherefore defendant prays the court to ascertain and determine the right, title, estate, interest and liens of the plaintiff and defendant respectively in and to, concerning or affecting said described property, and by its decree adjudge and settle all demanded claims, rights and interests in and to, concerning or affecting said property, and if the court determine that the defendant is the owner of the said property and entitled thereto, that it order and adjudge the defendant the possession thereof, and grant a writ of restitution to the defendant for the possession thereof, together with the value of the rents and profits as damages against the plaintiff for the withholding of the same from the defendant, and for such other orders and decrees as to the court may seem just and proper."

Plaintiff's reply in that suit denied the allegations of the answer and especially denied the allegations that defendant was the owner of said real estate and was entitled to any rental value thereof from plaintiff.

Said former suit was tried by the chancellor and a decree was entered, as stated, on November 12, 1917. As written and entered upon the records of the court, the decree stated that the court—

"doth find, adjudge and decree that the plaintiff is not entitled to the relief sought and prayed for in his petition; that the defendant, Joseph W. Mays, is vested with and is the owner of the fee simple title to the following real estate lying and being in Buchanan County, Missouri, and described in the pleading of the parties hereto, to-wit: The West eighteen and one-half (18½) feet of Lot twenty-eight (28) and all of Lot twenty-nine (29) in Block one (1), in Mitchell Thomas Addition to the City of St. Joseph; *that the plaintiff, Thomas W. Holcomb, has no right,* title, interest, *lien or claim whatsoever* in or to, concerning or

affecting the said real estate above described, *whether legal or equitable, and the plaintiff is forever barred* from asserting any thereto.''

The decree also found that defendant was entitled to the possession of the land and had been damaged in the sum of $200 for the withholding thereof and that the rental value was $30 per month; and adjudged that the plaintiff have possession of said real estate and recover said sum of $200 and $30 per month until possession was obtained.

The purpose of the *present* suit is to eliminate, from the decree so rendered, the judgment for $200 and that portion which says that the plaintiff has no ''*lien or claim whatsoever*'' ''*whether legal or equitable*'' in said real estate, and that ''*the plaintiff is forever barred from asserting any thereto.*'' The rest of the decree was not challenged.

The ground of relief is that the above elements were fraudulently inserted in the *form* prepared for the clerk's use in entering the decree in full upon the record.

The chancellor in the *present* suit found that the chancellor who heard the *other* suit—

''did not find, adjudge or decree the validity or invalidity of any equitable liens which might exist or be claimed between the plaintiff and defendant in said cause and affecting the title to said real estate, and did not in his decree estop or preclude either party from thereafter asserting or prosecuting any equitable liens, affecting the title to said real estate, and the court in its findings and decree refused to pass upon any equities between the said plaintiff and defendant, except to determine the legal title to the real estate mentioned in the evidence in said action; and that the words in said decree as they appear of record in paragraph two of said decree, to-wit: 'Lien or claim whatsoever,' 'concerning or affecting' 'whether legal or equitable and that the plaintiff is forever barred from asserting any thereto,' were not the findings, judgment and decree of the court and that same were written in said judgment entry

and spread upon the records of said court contrary to the findings and judgment of said court and without the knowledge of the trial judge thereof.''

The former decree was thereupon amended to conform to the findings, judgment and decree of the court in that cause by striking out of the second paragraph of said decree the words which declared that plaintiff had no legal or equitable liens and was forever barred from asserting any. In all other respects the former decree was declared to be as the court in that case had rendered it.

From this decree, amending the former decree, the defendant herein has appealed.

In his petition, as well as in the evidence, plaintiff admits that the court in the former suit found and adjudged that the defendant was the owner of the property. And he acquiesced in that finding, for after filing a motion for new trial on November 14, 1917, which was overruled on the 8th of December, 1917, no appeal was taken. Plaintiff's evidence is to the effect that the chancellor in the former suit did not adjudicate any question of plaintiff's right to an equitable lien by way of subrogation, but merely decided the issue as to the legal title to the property, and that *no evidence was offered* on the question of any equitable lien in plaintiff's favor. His charge of fraud is that after the court had announced that the finding would be against plaintiff and in favor of defendant, a form of decree was presented to plaintiff's counsel by the opposite side which included the elements he complains of herein; that this was done after the motion for new trial in that suit was filed, but before it was heard and passed on; that his counsel objected to the aforesaid features of it, and opposing counsel agreed that plaintiff's counsel would file a motion for new trial, and the matter in dispute would rest until he got back to the city, but in violation of that agreement opposing counsel handed the form of decree, as prepared, to the chancellor, telling the latter that plaintiff objected to it, but without telling

him it included a finding on the question of equitable
liens; that the decree was filed in the form that was
prepared on the day the motion for new trial was filed
and before it was heard; that, after a few days, plain-
tiff returned, and the motion for new trial was overruled,
plaintiff not knowing that the decree in the above form
had been filed, and after the motion was overruled, it
was agreed with opposing counsel that the latter should
thereafter prepare and submit a form of decree, but
the form of it was not discussed at that time; that
plaintiff then again went out of the city and was gone
until about the first of the year and when he returned
he forgot about the decree until after the term had
passed.　The defendant's evidence denied any agree-
ments of the kind.

The court, in the present case, did not find that
fraud was committed save only as implied in the finding
that the chancellor in the other case did not adjudge or
decree the validity or invalidity of any equitable liens
and did not in that decree preclude either party from
asserting such.　And our disposition of the case does
not seem to require us to decide whether there was any
fraud such as would justify the setting aside of any
part of said final decree.

The *petition* in the former suit called for an ad-
judication that plaintiff had the title and that defend-
ant had no interest or title in or to said real estate,
and prayed that plaintiff be granted *general equitable
relief*.　The *answer* set up that defendant was the owner
of the property but that plaintiff claimed some right or
lien therein adverse to the defendant and prayed to
the court to "ascertain and determine the right, title,
estate, interest and liens of the plaintiff and defendant
respectively" in said property, and to settle all claims,
rights and interest in the same.　Whether the case was
an equitable action to "quiet title" within the pur-
view of section 2535, or was only a suit in equity to va-
cate the sheriff's deed, it would seem that the right of
plaintiff to an equitable lien by way of subrogation

for sums he had paid was one of the matters to be adjudicated in said suit. For, if the suit was within the purview of section 2535, then, by virtue of the terms of that section, it was the duty of the court to "hear and finally determine any and all rights . . . liens and demands whatsoever of the parties" in said real estate "if the same be asked for in the pleadings of *either* party." And said section gives the court power to "award full and complete relief, whether legal or equitable, to the several parties, and to each of them as fully and with the same force and effect as the court might or could in any other or different action brought by the parties or any one of them to enforce any such right . . . lien or demand." Consequently, if under the pleadings, the case was or came within the purview of the statute to quiet title, then the plaintiff *should have offered evidence* as to his equitable liens, and when he failed to do so, the court, in finding for defendant as to the title, should have also found that plaintiff had no liens. If this be the character of the suit, then the decree as entered was the proper judgment and the only judgment that should have been rendered. [Armor v. Frey, 226 Mo. 646, 662-3; Himmelberger, etc., Lumber Co. v. Jones, 220 Mo. 190.] If the judgment is a proper one such as the court should have rendered, then plaintiff has no grounds of complaint now. [Curtis v. Bell, 131 Mo. App. 245, 252.]

On the other hand, even if the action was strictly and solely a suit in equity to set aside a deed, and, notwithstanding defendant's answer, did not come within the purview of the statute (which supplements the old equitable remedy to remove a cloud from the title. [Ball v. Woolfolk, 175 Mo. 285]), yet, the case was one in equity, and the plaintiff demanded *full equitable relief,* and the defendant's answer expressly charged that plaintiff claimed some equitable right or lien, the court *could* have granted plaintiff the relief of an equitable lien by way of subrogation if plaintiff had seen fit to present his evidence in support of that issue. Plaintiff

in that suit was, of course, aware of the facts which would entitle him to an equitable lien if he could not be declared the owner, for in February, 1917, prior to the bringing of that suit, he had brought an action to establish such equitable lien, but afterwards dismissed it and brought the other suit. It would seem that since the question of an equitable lien was within the issues that *could* have been adjudicated in that suit and wherein full equitable relief was asked, plaintiff should have offered evidence which would have enabled the court to grant full equity, and not subject the defendant to *two* suits when *one* would suffice. So that whether said suit was within or without the purview of section 2535, plaintiff's loss of an equitable lien, if any, does not seem to have arisen from the wording of the decree complained of, but from his failure to bring such right forward, urge it upon the court, and, if denied, appeal therefrom. [Emmert v. Aldridge, 231 Mo. 124, 129.]

Again, there is no question but that plaintiff knew that the finding of the chancellor in that suit would be against him and in defendant's favor and knew that opposing counsel had prepared a decree containing the objectionable features, and yet, notwithstanding the alleged agreement after the motion for new trial was overruled, in which agreement it is admitted the form of the decree was not discussed, the matter was forgotten and allowed to rest until after the term had passed during which time any difference as to the form of the decree could have been laid before the chancellor and have been settled by him, since, while the term lasted, he could have corrected the decree. Or, plaintiff, before or at the time the motion for new trial was heard, could have called the chancellor's attention to the question of what should properly go in the decree, and could have had it determined then. But he failed and neglected to do either, and such omission would seem to be fatal to the right to have the decree modified in a subsequent suit in equity. [23 Cyc. 979, 980; Renfro v. Renfro, 54 Mo. App. 429, 433.]

Moreover, plaintiff's petition in the present suit does not allege that he paid any sums which would entitle him to an equitable lien nor show that he was injured by that part of the decree complained of nor that he has suffered any loss thereby. Plaintiff has not seen fit to assist us with a brief upon his side of the case, but as we view the record, the judgment amending the former decree, should be reversed. It is so ordered. All concur.