ROTH et al., Appellants, v. RAUSCHENBUSCH et al..

Division Two, March 31, 1903.

1. **Wills: "HEIRS AND ASSIGNS."** The words "heirs and assigns" are not. necessary to devise a fee simple by will.

2. ——: ENTIRE ESTATE: SUBSEQUENT INFERENTIAL WORDS. When the words of a will at the outset clearly indicate a disposition in the testator to give the entire interest, use and benefit of the estate devised, absolutely to the first donee, that estate will not be cut down to a less estate by subsequent or ambiguous words inferential in their intent.

3. ——: ——: ABSOLUTE POWER OF DISPOSITION. Where by will or deed a fee simple is granted to the first taker with the absolute power of disposal superadded, the first taker takes a fee simple absolute and any attempt to limit an estate thereafter to another, either by remainder or executory devise, will be unavailing.

4. ——: ——: ——: LIFE ESTATE. If the testator devises a fee-simple or makes a general devise to the first taker with an absolute power of disposition in him, and there is neither by express words nor by necessary implication a mere life estate created in the first taker, all subsequent grants in the will must fail, because repugnant to the first grant.

5. ——: ——: ——: WILL IN SUIT: DISPOSAL EXERCISED: WHO CAN CHALLENGE: PARTIES TO ACTION. In one item the testator "gives devises and bequeaths to my beloved wife . . . the whole of my estate, real, personal and mixed, absolutely and forever." In the next item he provided that "such of the property herein bequeathed to her as may not have been disposed of by her at the time of her death, shall go and descend to and be divided among my blood relatives." Held, first, that the words in the first item give an absolute

fee simple to the wife in the realty; second, by both items, it is apparent the wife was to have an untrammeled power of alienation; third, the attempted disposition over of "the property herein bequeathed to her as may not have been disposed of by her at the time of her death," was void and repugnant to the prior devise to the wife, and the blood relatives took nothing thereby and, hence, they have no standing in court to question her disposition of the estate, and only her heirs and not the testator's "blood relatives" can challenge any deed by her as being the result of undue influence exercised on her by her grantees.

Appeal from Ste. Genevieve Circuit Court.—*Hon. Jas. D. Fox,* Judge.

Affirmed.

*Wm. Carter, J. N. Burks* and *Jerry B. Burks* for appellants.

(1) The court erred in holding and deciding that appellants' petition did not state facts sufficient to constitute a cause of action against respondents; and erred further in holding that appellants' petition, on its face, showed that the parties plaintiff had no interest whatsoever in the property sued for. Chiles v. Bartleson, 21 Mo. 344; Lewis v. Pittman, 101 Mo. 281 (overruling Wead v. Gray, 78 Mo. 59); Harbison v. James, 90 Mo. 411; Russell v. Eubanks, 84 Mo. 82; Smith v. Bell, 6 Pet. 68; Bean v. Kenmuir, 86 Mo. 666; Redman v. Barger, 118 Mo. 568; Cross v. Hoch, 149 Mo. 325; Small v. Field, 102 Mo. 127; Schorr v. Carter, 120 Mo. 412; Drake v. Crane, 127 Mo. 102; Long v. Timms, 107 Mo. 519; Walton v. Drumtra, 152 Mo. 489; R. S. 1899, secs. 4646, 4650, 4590; Nichols v. Boswell, 103 Mo. 154; Yocum v. Siler, 160 Mo. 281; Giles v. Little, 104 U. S. 291. (2) The court committed error in refusing to hold and decide that, under the will of Jacob Roth, the widow and legatee of the said Jacob Roth, deceased, took only a life estate and that the remainder of the said Jacob Roth's es-

tate, at the death of the said Bridget Roth, went to his blood relations, as provided in said will. McMillan v. Farrow, 141 Mo. 62; Carr v. Dings, 58 Mo. 404. (3) Under the facts alleged in appellants' petition, the court erred in holding that the widow had the right and authority under the will to dispose of the real estate in controversy in this suit, in the manner that it is alleged in appellants' petition she did dispose of the same. Nor could she make such a disposition of said property unless she was the owner in fee of the same, which fact appellants deny. Murphy v. Carlin, 113 Mo. 115; Noe v. Kern, 93 Mo. 367; McMillan v. Farrow, 141 Mo. 55; 45 Central Law Journal, p. 167; Howard v. Ames, 3 Metc. (Mass.) 311; Oberlin College v. Fowler, 10 Allen 545; Montague v. Daws, 14 Allen 369; Dyer v. Shurtleff, 112 Mass. 169; Dexter v. Shepard, 117 Mass. 485; Thomasen v. Heyward, 129 Mass. 401; Briggs v. Briggs, 135 Mass. 309; Clark v. Simms, 150 Mass. 357.

*Peter H. Huck* and *W. M. Williams* for respondents.

(1) Unless the proper construction of the will vests in plaintiffs all the property not disposed of by the widow during her lifetime, they have no standing in this suit. Jecko v. Taussig, 45 Mo. 167. (2) In construing a will the intention of the testator must be ascertained, if possible, and effectuated, unless it conflicts with some inflexible rule of law. Briant v. Garrison, 150 Mo. 655. (3) Roth intended by his will to give to his wife all of his property, absolutely. It was not his purpose to impose any restrictions or limitations upon her power to use or dispose of same. The fee simple title to his real estate vested in her, and she had the right to do with it as she pleased. The second clause of the will, in express terms, gives her the ''whole of the estate, real, personal and

mixed, absolutely and forever." This is not cut down
to a mere life estate by the subsequent clause provid-
ing, "If any of said property shall remain undis-
posed of by her," then "such property herein be-
queathed to her as may not have been disposed of by
her at her death shall go" to his blood relations
under the statutes of descents and distributions. 2
Underhill on Wills, sec. 689. (4) The absolute and
unrestricted power of disposition given the first
taker of an estate, unlimited, creates in such person
a fee, and a limitation over to another is void as be-
ing repugnant to the first grant. Ruby v. Barnett,
12 Mo. 3; Norcum v. D'Oench, 17 Mo. 98; Hazell v.
Hagin, 47 Mo. 277; Clark v. Leupp, 88 N. Y. 228;
Rosebaum v. Rosebaum, 81 N. Y. 356; Small v. Field,
102 Mo. 107; Cook v. Crouch, 100 Mo. 29. (5) The
third clause of the will is merely an expression of a
desire as to the course the wife's property, undis-
posed of by her in her lifetime, should take at her
death, and is not a limitation over of the property
bequeathed to her, so as to cut down her title to a mere
life estate. Cambell v. Beaumant, 91 N. Y. 464;
Howard v. Cruise, 109 U. S. 725; Hoxsey v. Hoxsey,
37 N. J. Eq. 24. (6) Roth, by the words, "give, de-
vise and bequeath the whole of my estate, real, per-
sonal and mixed, absolutely and forever," unques-
tionably intended to devise to his said wife his whole
estate in said lands. These words are ample for that
purpose in a will, and it is unnecessary to cite prece-
dents to establish that it has been often so held. It
is also well settled by many well-considered cases that
"when the words of a will in the first instance clearly
indicate a disposition in the testator to give the entire
interest, use and benefit of the estate absolutely to the
donee, it will not be cut down to any less estate by
subsequent or ambiguous words, inferential in their
intent." Yocum v. Siler, 160 Mo. 289; Clark v.
Leupp, 88 N. Y. 228.

GANTT, P. J.—Plaintiffs, who claim to be the nearest "blood relations" of Jacob Roth, deceased, bring this suit to set aside two deeds executed by Bridget Roth, his widow, one to defendant August Rauschenbusch, dated August 3, 1876, and a subsequent one to defendant, Huck, dated April 10, 1894, conveying certain real estate, which belonged to said Jacob Roth, at the time of his death.

The rights of the parties litigant depend upon the construction of the will of the said Jacob Roth, deceased, which was executed on August 12, 1845, and probated on April 9, 1875.

The second and third paragraphs of said will are as follows:

"Second. I give, devise and bequeath to my beloved wife, Bridget Roth, formerly Bridget Hook, the whole of my estate, real, personal and mixed, absolutely and forever."

"Third. It is my will, however, that after the decease of my said wife, if any of said property shall remain undisposed of by her, then such property, that is to say, such of the property herein bequeathed to her as may not have been disposed of by her at the time of her death, shall go and descend to and be divided among my blood relations, according to the rules of descents and distributions in the State of Missouri now in force."

Jacob Roth left no descendants. His widow died May 24, 1895. This suit was instituted in October, 1898.

The petition is divided into two counts, or at least there are two separate prayers for relief. It is charged in the first that Bridget Roth was induced by defendant, Rauschenbusch, a prominent minister of the church to which she belonged, to convey to him the real estate described in the petition, for a nominal consideration of one dollar; that he represented to her that he desired said property to assist him in build-

ing up and fostering the interest of his and her church, and particularly for the purpose of building some kind of an asylum. Plaintiffs claim to be remaindermen, and charge that said defendant induced Bridget Roth to enter into a conspiracy to cheat and defraud them out of said real estate, and thereby procured from her a warranty deed conveying the said property to him, without any consideration therefor.

The second count alleges that defendant Huck subsequently obtained a deed from her conveying to him said real estate, and charges that said Bridget Roth was induced to execute the same by undue and improper influences, and without consideration.

Each of the defendants filed a separate demurrer to the petition, assigning:

First. A misjoinder of parties and causes of action.

Second. That the petition fails to state facts sufficient to constitute a cause of action, as it appears from the face of the petition that the parties plaintiff have no interest in the property sued for.

These demurrers were sustained, and plaintiffs declining to plead further, final judgment was rendered in favor of the defendants, and the case has been brought to this court by appeal.

I. This record presents the ever-recurring difficulty of construing the language of a last will.

The rules of construction are so well defined and so frequently invoked that they need only to be mentioned. Indeed, in this State they are largely statutory. Thus section 4650, Revised Statutes 1899, requires "all courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." Obeying this behest, this court on many occasions has announced that "the cardinal rule in the interpretation

of a will is that the intention of the testator, as gathered from the whole instrument, shall control, and in arriving at such intention the relation of the testator to the beneficiaries named in the will, and the circumstances surrounding him at the time of its execution may be taken into consideration." [McMillan v. Farrow, 141 Mo. 62, and cases cited.]

Another canon for the construction of the words of a will is that when the words of a will at the outset clearly indicate a disposition in the testator to give the entire interest, use and benefit of the estate devised, absolutely to the first donee, that estate will not be cut down to a less estate by subsequent or ambiguous words inferential in their intent. It is well settled that in wills the words "heirs and assigns" are not necessary to devise a fee simple. With these principles for our guides, we must inquire what was the intention of Jacob Roth in making his last will.

In the second item he "gives, devises and bequeaths to his beloved wife, Bridget Roth, formerly Bridget Hook, the *whole of his estate,* real, personal and mixed, *absolutely and forever."*

As was said in Yocum v. Siler, 160 Mo. loc. cit. 289, "By the words 'bequeath absolutely,' he unquestionably intended to devise to his son [in this case his wife] his whole estate in said lands. These words are ample for that purpose in a will, and it is unnecessary to cite precedents to establish that it has been often so held." In Yocum v. Siler, supra, the word "absolutely" was held to indicate the testator's purpose to give a fee simple, but in this will other words, "the whole of my estate, real, personal and mixed," are added, and it would be difficult indeed to find language which would more clearly indicate an intention to give his wife an absolute fee simple in his lands and a perfect title to his personal estate. Had he stopped here, counsel for appellants frankly concede no doubt could be entertained that by his will

he *intended* to, and did give his wife the fee simple to the lands in suit. But their insistence is, that by the third item or paragraph the intention of the testator is made apparent, notwithstanding the emphatic words of the second paragraph, to give his wife a *life* estate with a remainder over to his blood relations. That paragraph, as already noted in the statement, is: "Third. It is my will, however, that after the decease of my said wife, *if any* of said property *shall* remain undisposed of *by her*, then such property, that is to say, *such of the property herein bequeathed to her,* as may not have been disposed of by her at the time of her death, shall go and descend to and be divided among my blood relations according to the rules of descents and distributions in the State of Missouri now in force."

Jacob Roth left no issue of his body or their descendants. Mrs. Roth died without issue. While plaintiffs allege they are the sole surviving blood relations, there is no allegation of what that particular relationship is, whether near or remote. It is plain that outside of his wife he had no *particular person* in his mind to whom he desired to give any portion of his property or to whom he bore any special relation which would suggest him as a special object of his bounty.

Reading the two paragraphs together we think it is apparent that the one person for whom he was providing was his wife. Not only is the grant of his estate absolute in the second paragraph, but it is plain by the third paragraph he intended she should have an untrammeled power of alienation. There are no words of restraint upon her power of disposal. Nowhere in the four corners of this instrument are to be found any words limiting her right to sell or dispose of the property *"for her necessary support"* and maintenance. These words can not by any fair inference be interpolated into the will. [Atty.-Gen. v.

Hall, Fitz. 314; McLellan v. Larchar, 43 N. J. Eq. loc. cit. 23; Howard v. Carusi, 109 U. S. 725-730.]

The language of one will is rarely exactly like another, and frequently a very slight change in the verbiage calls for a different construction of two wills much alike in other respects. [Halliday v. Stickler, 78 Iowa 388.]

In Halliday v. Stickler, 78 Iowa 388 (43 N. W. 228), the will contained the following devise: "I give, devise and bequeath unto my beloved husband, B., all the rest and residue of both my real and personal estate, of every name and nature whatsoever, and whatever of the same should be left at his decease I direct should be equally divided between the children of the said B. and their heirs and assigns forever." The construction of this will came before the Supreme Court. It was contended that the husband took merely a life estate with remainder to his children, but the court said: "It is a devise of the real estate in general terms. It neither by words nor by any fair implication limits the devise to a life estate. On the contrary, and in addition to the general devise, without words of limitation by plain implication, it authorizes the devisee to sell and convey the land. There is no devise over unless some of said estate should be left at the death of the devisee. If a life estate was intended to be devised the whole of the real estate would be left at the decease of George Beer."

2 Underhill on Wills, section 689, collates the authorities and deduces the rule announced by this court in Banc in Cornwell v. Wulff, 148 Mo. 542, that where by will or deed a fee simple is granted to the first taker with the absolute power of disposal superadded, the first taker takes a fee simple absolute, and any attempt to limit an estate thereafter to another, either by remainder or executory devise, will be unavailing. After all the discussion in Cornwell v. Wulff, and Walton v. Drumtra, 152 Mo. 489, in which

the construction placed by this court upon the deed in Cornwell v. Wulff was discredited, the *law* remained just as it had been announced by this court in that case and the courts generally throughout the land. The difference was in applying it to the *given instrument.* Judge MARSHALL, who wrote the views of the majority in condemning the judgment in Cornwell v. Wulff, says, "We *all* agree, and *all the modern adjudications agree,* that a conveyance which confers an *absolute* power of disposal, creates a fee in the grantee. We also agree that a fee can not be limited upon a fee." He further says that, "We disagree only as to the proper method of so limiting or qualifying the estate of the first taker."

The writer again most respectfully insists, however, that his learned brother misconceived the majority opinion in Cornwell v. Wulff when he states that "the majority opinion required that intention [the intention to create a life estate merely] to be evidenced by the express term *'for life,'* while the minority opinion held that 'the intention must be gathered from the four corners of the instrument,' and might be evidenced by any words that clearly conveyed it." The writer hereof disclaimed that Cornwell v. Wulff, 148 Mo. 542, announced the rule that the life estate must have been created by *express* words, and then and now concedes and agrees, that the life estate need not be crated by *express* words, but if it is the clear intention from the whole instrument that the first taker is to have but a life estate, the added power of disposition will not convert it into an absolute ownership.

Bowing as I should and do to the views of the majority of my brethren, I take it that if another deed be found in the *same terms* of the Cornwell deed, it should be ruled that it created a life estate merely in the first taker, but as every member of the court conceded in the two opinions that if land be granted by will or deed to the first taker *without words* which

expressly or by fair implication indicate he is to have a life estate merely, and an absolute power of alienation is coupled with such grant, then no remainder can be limited thereafter, because "a remainder can not be limited after a fee," nor could an executory devise thereafter be sustained, because such a limitation is inconsistent with the absolute estate and power of disposition *expressly given or necessarily implied* from the will, and as each instrument is to be construed and measured by the law, when words are employed in an instrument different from those used in the decided case just mentioned, it is and will continue to be in every case the duty of the courts to search out the intention of the testator in his will. If we find he only intended to create a life estate in the first taker, then his disposition of his property after the termination of the life estate by way of executory devise, will and must be sustained. If on the contrary the testator devises a fee simple or generally to the first taker with an *absolute power* of disposal in him, and there is neither by express words nor implication a mere life estate created in the first taker, all subsequent grants in the will must fail, because repugnant to the first grant and because it conflicts with a settled rule of law.

This will of Jacob Roth gives his wife not only "the *whole* of his estate" "*absolutely* and *forever*," by words amply sufficient to create in her a fee simple, but in the third paragraph the absolute power of alienation is superadded by necessary implication. What, then, becomes of the further devise "*if any of said property shall remain undisposed of, the property herein bequeathed to her* as may not have been disposed of by her at the time of her death, shall go and descend to and be divided among my blood relations," etc.?

We are clearly of the opinion that this attempted disposition over was void and repugnant to the prior

devise to his wife, and the blood relations took noth-ing thereby.    This was the view of the circuit court.

We are, however, cited to the case of McMillan v. Farrow, 141 Mo. 55.    In that case, however, it will be observed that Judge BURGESS, speaking for the court, emphasizes the fact that the testator treats of the property as *"his."*    In that case the testator de-vised the property to his wife *to hold* and *enjoy* by her with power and authority to sell, but if she died be-fore he did, or if she survived him, whatever of "his" property remained undisposed of should go to Joseph McKinney and his heirs absolutely and in fee simple. Said the learned judge:    "The testator speaks of the property in both the second and third clauses of the will, *remaining* undisposed of by his wife as '*his prop-erty,*' which clearly shows he did not intend to give it to his wife absolutely, but only to give her a *life* estate with power of disposal."    Whereas Jacob Roth in this will, after using the most emphatic lan-guage conveying "the whole of his estate absolutely and *forever,*" to his wife, speaks of it not as *my* prop-erty, but *the property herein bequeathed to her.*    We think the intention of the two testators is plainly different.    In the one the testator indicates a desire for his wife to *hold and enjoy* and then plainly ex-presses his will that a special object of his bounty shall have the fee simple.    In the other, the will be-fore us, he plainly designated his wife as the special object of his bounty.    To her he gives absolutely everything he has with an absolute power of disposal, and seems to think that if at her death any of it re-mains undisposed of, he could direct its further devo-lution, something which the rules of law do not per-mit.    [McLellan v. Larchar, 45 N. J. Eq. l. c. 20; Wolfer v. Hemmer, 144 Ill. 554.]    But again, the law is that when the words of the will clearly indicate an intention to give the entire estate absolutely to the

first donee, his estate will not be cut down to a less estate by subsequent or ambiguous words. [Yocum v. Siler, 160 Mo. 289.]

Thus in Cook v. Couch, 100 Mo. 34, the testator gave his wife and five children all of his estate, share and share alike, and then preserved to her her dower also, and then added "and (she shall) be privileged to will to whom she may see proper, her portion of my real estate." The contention was that she took a life estate only with power to dispose of the one-sixth *by will only.* But this court, speaking through Judge BLACK, said: "There are no words expressly limiting the wife to a life estate in the one-sixth, and the words saying that she shall be privileged to will to whom she may see proper, do not indicate an intention to devise an estate for life only." The learned judge then adds: "The most that can be said in behalf of the theory advanced by the plaintiff is, that there is here a devise generally of the one-sixth with a superadded power to dispose of the same *by will.* The general rule is, that a devise of an estate generally or indefinitely, with a power of disposition over it, carries a fee. [Rubey v. Barnett, 12 Mo. 3; Gregory v. Cowgill, 19 Mo. 416; Green v. Sutton, 50 Mo. 186.] A distinction must be made between those cases where there is a devise generally or indefinitely with a power of disposition, and those cases where there is a devise for life with a power of disposition. In the former the devisee takes the property in fee. [Reinders v. Koppelman, 68 Mo. 482.]"

In Small v. Field, 102 Mo. 127 and 128, Judge SHERWOOD, speaking for the court, discussing section 4004, Revised Statutes 1879, now section 4646, Revised Statutes 1899, said: "Under this statute it is obvious that the absolute estate in fee granted to Mrs. Kate Greene could not be impaired, cut down or qualified *except by words as affirmatively strong as those which conveyed the estate to her.*" To the same ef-

fect is the recent case of Roberts v. Crume, in this Division, 173 Mo. 572. We look in vain in the will of Jacob Roth for any words *as affirmatively strong* or even approximating those which he used in devising the fee simple of his estate to his wife. Our conclusion is that Mrs. Roth took a fee simple with a superadded power of disposal, and that the plaintiffs, therefore, took no interest by the will of Jacob Roth, and hence have no standing in a court of equity to question her disposition of her estate. Her heirs alone can be heard to challenge the validity of her deeds to defendants on account of the alleged undue influence exerted upon her to procure their execution. The judgment of the circuit court is affirmed. All concur, except *Fox, J.,* not sitting, he having presided on circuit.