BENJAMIN G. CHAPMAN, JR., Trustee Under the Will of WILLIAM R. PYE, v. LOUISA H. CHAPMAN et al., ELIZABETH E. PULITZER et al., Appellants.—77 S. W. (2d) 87.

Division Two, December 1, 1934.*

---

*NOTE: Opinion filed at September Term, 1933, February 23, 1934; motion for rehearing overruled July 9, 1934; motion to transfer to Court en Banc overruled July 9, 1934; opinion modified on Court's own motion July 9, 1934; motion for rehearing on modified opinion filed; motion overruled at September Term, December 1, 1934.

T. M. Pierce, Samuel H. Liberman, John H. Overall and Ragland, Otto & Potter for appellants.

100

*Bryan, Williams, Cave & McPheeters* for respondents.

TIPTON, J.—This is an appeal from a decree dismissing the petition of the interveners, wherein the plaintiff, Benjamin G. Chapman Jr., as trustee of a trust created by a will of William R. Pye had instituted a suit in the Circuit Court of the City of St. Louis, Missouri, against Louisa H. Chapman; himself, in his capacity as executor of the estate of Fannie H. Higbee and the Bethesda, a corporation. The plaintiff in this petition sought a decree approving an accounting and ordering his discharge as trustee of the trust estate created by this will. Such a decree had been entered but was set aside on motion of the interveners. The interveners' petition stated that under the will of William R. Pye, Louisa Chapman and Fannie Higbee were entitled to an equitable life estate; that the testator died intestate as to the remainder; that he now had no heirs; and that the interveners were the heirs of his pre-deceased wife and as such were entitled to the remainder of the trust estate.

The facts which are disclosed by the records show that Pye died in April, 1889, a resident of the city of St. Louis, Missouri. At the time of his death he was survived by a brother, Josiah Pye, who was married and had a son named Joseph or Josiah Pye, who was subsequently married; a sister, Clarissa L. Wheeler, who at her death left no

descendants; a grandnephew, Charles Weeks; and a niece, Mrs. Dusenberry. All of the above-named heirs of the testator were non-residents of this State.

The testator was married but his wife predeceased him. She had a half sister, Laura Hobbs, who was the mother of Fannie H. Higbee, Louisa H. Chapman and Elizabeth Edgar; the latter was the mother of Elizabeth Pulitzer, Ethel Allen, Dorothy Bennett and Laura E. Whitman. Mrs. Pye had a full sister, Elizabeth Norris Beal, who was the mother of Edward N. Beal and Benjamin L. Beal. The children of Elizabeth Edgar and Elizabeth Norris Beal are the interveners in this case. The interveners undertook to prove that at the time of the trial the testator had no heirs living and that they are entitled to the remainder of the trust estate after the death of Mrs. Chapman and Mrs. Higbee by virtue of Section 308 of the Revised Statutes of Missouri, 1929.

The testimony of Louisa Chapman showed that the testator had two brothers, Josiah Pye who lived in Cincinnati, and Edward Pye, who lived in Brooklyn; that Edward Pye died before the testator, leaving two daughters, one, Mrs. Weeks and the other, Mrs. Dusenberry. Mrs. Weeks predeceased the testator, leaving a son, Charles Weeks, who lived in Brooklyn and who was not married at the time she knew him. She did not know whether he was alive or dead; as the last time she heard of him he was twenty-one or twenty-two years old. She did not know the given name of Mr. or Mrs. Dusenberry, and she did not know whether or not Mrs. Dusenberry was alive at the time of Mr. Pye's death; in fact she did not know anything about her or whether she had any children. She testified that the testator's brother, Josiah Pye was alive at the time of the testator's death and had a son by the name of Joseph or Josiah; that she had never seen this son, and she did not know his age or anything about him; that Josiah Pye died two or three years after the death of the testator; that the testator had two sisters, Mrs. deFrost, who predeceased him; the other sister, Mrs. Charles L. Wheeler, was living at the time of the testator's death but died about two years later, leaving no children.

The interveners employed two investigators who made an examination of the city and telephone directories in Cincinnati, New York and Brooklyn. They testified they were unable to locate any of the testator's relatives about whom Mrs. Chapman had testified. They also testified that they were unable to find any of the heirs of the testator according to the vital statistics of these respective cities, they did not find any burial permits for the testator's known heirs.

The pertinent parts of the will that created the trust estate are as follows:

"I do hereby convey, transfer and assign unto Benjamin G. Chapman and Warner M. Hopkins, of the City of St. Louis, State

of Missouri, all the real estate that I may die possessed of (more particularly set forth in an inventory hereto annexed) consisting of business and resident property of the City of Saint Louis, Missouri, and leasehold therein, and lands in Colorado and also all other real estate that I may hereafter acquire or become possessed of; also all personal property and effects now belonging to me or hereafter acquired by me of whatever character, embracing moneys on hand or that may be due, or becoming due to me; all Bonds, or Stocks of corporations, all notes of hand for moneys due me and mortgages or deeds of trust securing same, to be held by them, the said Benjamin G. Chapman and Warner M. Hopkins, In Trust however, for the sole use and exclusive benefit and disposal of my two nieces, sisters of the said Warner M. Hopkins, to-wit: Fannie R. Hopkins and her sister, Louisa H. Chapman, wife of the said Benjamin G. Chapman, share and share alike, subject, however, to the following described bequests and conditions.

"The said trustee B. G. Chapman and W. M. Hopkins, or their successors, or the surviving one, are hereby authorized, with the written consent of the aforesaid beneficiaries, Fannie R. and Lulu H., or the surviving one, to sell, convey, or dispose of any or all the real estate or personal property hereby conveyed to them, and invest the proceeds of said sale in other property as they may elect, for the sole use and disposal of the said beneficiaries, their heirs and assigns.

"1st. It is hereby conditioned and provided that one-half of the real estate and personal property (except household effects) hereby bequeathed and for the use of the said Fannie R. Hopkins, or the equivalent thereof, in money value shall be conveyed, transferred and bequeathed, at her death, by her will and testament, or in default of such conveyance by the said Fannie R. Hopkins, her administrator or executor, shall convey to 'The Saint Louis Bethel Association of the City of St. Louis,' Missouri, a corporation of the said city, for the purpose of erecting in said city a house for public, religious, christian worship, as the trustee or directors of said Bethel Association may determine—or the said Fannie R. Hopkins may appropriate such bequest to any other charitable purpose that she may select or determine."

In subsequent clauses, the testator made specific bequests, including an annuity of $1,000 per annum, to his sister, Clarissa L. Wheeler; $500 per annum to his brother, Edward R. Pye; and $600 to Elizabeth Edgar, his wife's niece, for their respective lives. These beneficiaries are now dead. There were other bequests which are not essential to set out, but suffice to say that all bequests have been paid.

The Saint Louis Bethel Association is the same as the Bethesda.

In the year 1917 the trustees brought a suit in the Circuit Court of the City of St. Louis, to construe this will. The court held that

the Bethesda Corporation was entitled to one-half the value of property left to Fannie Higbee at the time of Mr. Pye's death, which amounted to $51,185.82; also that Louisa Chapman and Fannie Higbee were entitled to stock dividends held by the trustees.

Fannie R. Higbee died in the year 1927, leaving a will in which she bequeathed $51,185.82 to the Bethesda Corporation. By stipulation of the parties to this proceeding, the Bethesda Corporation has been paid this sum and it has no further interest in this litigation.

The trial court dismissed the interveners' petition on the grounds that they did not have and could not have any interest in this trust estate. The other essential facts will be stated in the course of this opinion.

It is the contention of the appellants that under the will, Louisa Chapman and Fannie Higbee took an equitable life estate while the defendants contend that they took an equitable fee.

It therefore becomes necessary for us to construe the testator's will. We agree with the interveners that in construing this will, we must gather the testator's intention from the words used in the will. [Crowson v. Crowson, 19 S. W. (2d) 634.] The rule of construction of wills to be observed is to ascertain the intention of the testator and to give effect to such intention, unless it conflicts with some positive rule of law and it is necessary to take the will as a whole in arriving at such intention and not give any clause in the instrument undue preference. It is our duty in construing this will to give it a construction that will carry out the intention of its maker. [Triplett v. Triplett, 332 Mo. 870, 60 S. W. (2d) 13.]

The vital question in this case is what estate did Fannie and Louisa take under this will. The interveners contend that they took an equitable life estate, and the remainder after their respective deaths went to the heirs of the testator. In other words, the testator intended to die intestate as to the remainder.

After the testator conveyed, transferred and assigned his property to Benjamin G. Chapman and Warner M. Hopkins, to be held by them in trust, his will then provides:

"In trust, however, for the sole use and exclusive benefit and disposal of my two nieces; sister of the said Warner M. Hopkins, to-wit: Fannie R. Hopkins and her sister, Louisa H. Chapman, wife of the said Benjamin G. Chapman share and share alike, subject however, to the following bequests and conditions."

The interveners contend that by this clause the testator clearly intended that Fannie and Louisa take an equitable life estate, because he gives them this property for their "use" and their "benefit." Interveners contend that the word "use" shows that the testator did not intend to give them the property absolutely, but only the right to enjoy the benefits of the property and cites numerous cases in sup-

port of this proposition. We will only analyze a few of these cases, because space will not permit us to analyze all of them.

In Freeman v. Maxwell, 262 Mo. 13, 170 S. W. 1150, the will read, "I bequeath to her sole and separate use . . . the balance remaining after the death of my said daughter to go to her surviving children share and share alike." The court held that the daughter took a life estate. In that case a life estate was created by implication, because the testator disposed of the remainder.

In Cross v. Hoch, 149 Mo. 325, 50 S. W. 786, the will read, "provided that the property here devised to Sarah Cross be subject to the trust, care and control of my son Turner Maddox for her use." The will further provided that if she died without children, then it should be divided among his other daughters. The court held that Sarah Cross took only a life estate by implication.

In Mace v. Hollenbeck, 175 S. W. 876, the will stated: "I hereby give and bequeath to my beloved wife . . . to be used for her benefit and assistance in whatever manner she chooses during her natural life . . . the remainder to be divided" equally between the testator's and her heirs. In that case the will specifically created a life estate in the wife and also by implication because it disposed of the remainder.

In Peugnet v. Berthold, 183 Mo. 61, 81 S. W. 874, the pertinent clauses of the will are as follows:

"Third. The remaining one-half of the estate I give and bequeath to John B. Sarpy Berthold, as trustee without bond, for my son Maurice and for the sole use and benefit of said son, and at death of said son this trust shall cease.

"Fourth. The said trustee shall have full power to buy, sell, mortgage, invest, improve and manage, all of the said one-half interest or proceeds thereof held in trust during the life of said Maurice B. Peugnet."

The fifth paragraph gave the son the income only, and the sixth paragraph gave him the right of disposal at his death by will or otherwise. In that will a life estate was created by express words.

Taking the above-mentioned portion of this testator's will alone, the cases cited by the interveners are not in point. So far the testator has given the legal title to the trustees and the equitable fee to Fannie and Louisa. He not only gave them the "sole use" and "exclusive benefit" of the property devised to them but he has given them the "disposal." He does not directly give them a life estate, nor does he do so by implication, unless he does so after the following phrases, "subject, however, to the following bequests and conditions," which will be discussed later.

So far the testator has given them the "use," "benefit" and "disposal," unless there is some restriction on their right of disposal, he has given the beneficiaries the fee. We do not want to be under-

stood as holding that if the testator either directly or by implication devises his property to the beneficiary for life, with the power of disposal, that the added power of disposal would enlarge the life estate to an estate in fee. [Lewis v. Pitman, 101 Mo. 281, 14 S. W. 52.]

In the case of Rubey v. Barnett, 12 Mo. 5, we said:

"A devise to B., to dispose at his will and pleasure, gives a fee, and devises to dispose of for payment of debts, or to give, sell or do therewith at pleasure, are held to give an absolute estate in lands. But a devise to a wife for life, and after her decease she to give the same to whom she will, passes but an estate for life with a power; yet if an express estate for life had not been devised to the wife, an estate in fee would have passed by the other words."

In the case of Roth v. Rauschenbusch, 173 Mo. 582, l. c. 592, 73 S. W. 664, we said:

"If we find he only intended to create a life estate in the first taker, then his disposition of his property after the termination of the life estate by way of executory devise, will and must be sustained. If, on the contrary the testator devises a fee simple or generally to the first taker with an *absolute power* of disposal in him, and there is neither by express words nor implication a mere life estate created in the first taker, all subsequent grants in the will must fail, because repugnant to the first grant and because it conflicts with a settled rule of law."

In the case of Fries v. Fries, 306 Mo. 101, l. c. 107, 267 S. W. 116, we said:

"When this paragraph is considered alone it appears that it is sufficient to invest the widow with the fee simple title. Neither in it nor elsewhere in the will is any devise 'made of the devised premies, to take effect after the death of the devisee,' and considered alone, it comes within the terms of Section 551, Revised Statutes 1919, and, under that section, would have to be held to convey to the devisee an absolute estate in fee simple. [Payne v. Reece, 297 Mo. 54.] The power of disposition conferred by the language of this paragraph is not one merely inferable from the nature of the estate devised but, in addition, is expressly conferred, in terms, and is as full, complete, unrestricted and unhampered as language could make it. It is obvious that merely to add to words which convey a fee express words which make explicit a power to convey which is implicit in words which create a fee, raises no implication of a limitation or diminution of the fee."

In the case of Tisdale v. Prather, 210 Mo. 402, l. c. 410, 109 S. W. 41, we said:

"It is now well settled that a conveyance which confers an absolute power of disposition creates a fee simple estate in the grantee, if by

deed, or in the devisee, if by will, in the absence of an expressed intention to devise a life estate only."

Unless there are some conditions in the subsequent clauses of the will showing a contrary intention, we have no hesitancy in holding that Fannie and Louisa took an equitable fee under the testator's will.

We will now examine the subsequent clauses of the will. The next paragraph of the will reads as follows:

"The said trustees B. G. Chapman and W. M. Hopkins, or their successors, or the surviving trustee, are hereby authorized, with the written consent of the aforesaid beneficiaries, Fannie R. and Lulu H., or the surviving one, to sell, convey, or dispose of any or all the real estate or personal property hereby conveyed to them, and invest the proceeds of said sale in other property as they may elect, for the sole use and disposal of the said beneficiaries, their heirs and assigns."

The interveners contend that the assets of the trust estate can only be disposed of for value, and the proceeds reinvested; that this paragraph of the will clearly shows that the testator intended to give Fannie and Louisa a life estate. In other words, if they had a fee they could give the property away. We are cited to cases that hold that where the life tenant has power of disposal, the disposition of the property held by the life tenant must be for a consideration. [Cook v. Higgins, 290 Mo. 402, 235 S. W. 807; Burnet v. Burnet, 244 Mo. 491, 148 S. W. 872; Gibson v. Gibson, 239 Mo. 490, 144 S. W. 770; Garland v. Garland, 164 Mo. 1; Lewis v. Pitman, 101 Mo. 281.] This would be true if Fannie and Louisa held only an equitable life estate. Here the trustees are authorized to convey the property only with the written consent of the beneficiaries, and to invest the proceeds of said sale in other property as they (Fannie and Louisa), elect and then only "for the use and disposal of the beneficiaries, their heirs and assigns." Here, it seems to us that he reaffirms the giving of the fee to Fannie and Louisa. We do not know how stronger language could be used to pass the absolute fee than was used here. He gives them the property for their "sole use" and "disposal" and to their "heirs and assigns."

There were certain charges upon this trust fund, as above stated. For instance, the testator gave $1,000 per annum to his sister Clarissa L. Wheeler for her life; $500 per annum to his brother, Edward R. Pye for his life; and $600 per annum to his wife's niece, Elizabeth Edgar, for her life. There were bequests to his nephew, William Hopkins; to the Bishop of the Protestant Episcopal Church; to Saint Stephens Mission; and the St. Louis Protestant Hospital Association to "be paid by his executor at their discretion as to the time of payment of said sum therein, bequeathed, and not to interfere with the payments of the several annuities." These annuities and bequests must be paid as these are charges upon this trust estate and if the

beneficiaries took care of these charges they could do as they pleased with the rest of the property. It is to be noted that the beneficiaries are not given the income only, but are given the property. Moreover, we have held that the testator in the first paragraph of the will conveyed to the beneficiaries an absolute fee when the will used the words for their "use," "benefit" and "disposal" and this fee could not be cut down to a life estate unless the words are used by the testator that clearly showed he intended to cut down the fee previously granted. [Roth v. Rauschenbusch, supra.]

In the case of Tisdale v. Prather, supra, the will reads:

"I give and bequeath to my daughter, A. M. Tisdale (certain described property) . . . to hold the same unto her and her heirs forever, with full power to sell and dispose of the same at any time she may think best, the proceeds of the sale to be invested, if she desires it, in any other property, to be conveyed to her and the heirs of her body."

The court held that the daughter took a fee in the property.

In the case at bar the will is very similar to the one in the Tisdale case, the testator here gave the beneficiaries the right to convey the property "and invest the proceeds of the sale in the other property *as they may elect*, for the sole use and disposal of the beneficiaries, their heirs and assigns." (Italics ours.) We see nothing in this clause of the will that changes the fee previously devised to a life estate.

The only other clause in the will that in any way pertains to the estate bequeathed to either Fannie or Louisa is as follows:

"1st. It is hereby conditioned and provided that one-half of the real estate and personal property (except household effects) hereby bequeathed to and for the use of the said Fannie R. Hopkins, equivalent thereof, in money value shall be conveyed, transferred and bequeathed, at her death, by her will and testament, or in default of such conveyance by the said Fannie R. Hopkins, her administrator or executor, shall convey to 'The Saint Louis Bethel Association of the City of Saint Louis,' Missouri, a corporation of the said City, for the purpose of erecting in the said city a house for public, religious worship, as the trustee or directors of the said Bethel Association may determine . . . or the said Fannie R. Hopkins may appropriate such bequest to any other charitable purpose that she may select or determine."

As above stated, it is the contention that Fannie and Louisa took only an equitable life estate and that the testator died intestate as to the remainder. It is presumed in the construction of a will that the testator intended to dispose of his entire estate.

In Paris v. Erisman, 300 S. W. 487, we said:

"Other rules of construction are as firmly fixed, and equally as strong. We have the presumption that the testator intended to dis-

pose of all his property by the will. SEDDON, C., has accurately stated the rule in Bond v. Riley, supra, 296 S. W. l. c. 405, thus:

" 'Furthermore, in the construction of a will the court always starts with the presumption the testator intended to dispose of his whole estate by the will, or in other words, the presumption is against partial intestacy of the testator, where the will, as a whole, indicates the intent of the testator to make a complete disposition of all of his property; the reason of the presumption being to prevent the incongruous situation of the estate passing partly by will and partly by descent.' . . .

"Not only do we have the presumption, and must start with such presumption, in the construction of the will, *but so strong is the presumption that the court may supply words, or transpose words, to the end that the intent may be preserved.*" (Italics ours.)

In Tebow v. Dougherty, 205 Mo. 315, 103 S. W. 985:

"In addition to this intention appearing upon the face of the will, it is presumed in the construction of a will that the testator intended to dispose of his entire estate, and not to carve out a particular estate and dispose of that, leaving the remainder to descend to heirs at law, according to the Statute of Descent and Distribution."

Again in a very recent case of St. Louis Union Trust Company v. Little, 10 S. W. (2d) 47, we said:

"In the footnote above cited in Jarman on Wills, it is said: 'Every intendment is to be made against holding a man to die intestate, who sits down to dispose of the residue of his property.' . . .

"*Missouri decisions uniformly hold that the general intendment and presumption is against partial intestacy where any other reasonable construction is possible.*" (Italics ours.)

Section 563 of the Revised Statutes of Missouri 1929 is as follows:

"In all devises of lands or other estate in this State, in which the words 'heirs and assigns,' or 'heirs and assigns forever,' are omitted, and no expressions are contained in such will whereby it shall appear that such devise was intended to convey an estate for life only, and no further devise be made of the devised premises, to take effect after the death of the devisee to whom the same shall be given, it shall be understood to be the intention of the testator thereby to devise an absolute estate in the same, and shall convey an estate in fee simple to the devisee, for all such devised premises."

The last-quoted clause in the will does not refer to Louisa but refers only to Fannie. In this clause the testator states that one-half of the property bequeathed Fannie at her death, shall go to "The Saint Louis Bethel Association of the City of Saint Louis," Missouri, a corporation, and in default of her making a will to that effect, her administrator or executor shall convey the one-half the property bequeathed to her, to this corporation. Here the testator clearly left one-half the property bequeathed to Fannie as a life estate, by im-

plication, with the remainder to the "Saint Louis Bethel Association." This, clause does not undertake to dispose of the other one-half of the property bequeathed to Fannie.

As previously stated the "Saint Louis Bethel Association," or the "Bethesda," a corporation has been paid the amount of its claim under the will and it is no longer interested in this litigation.

Now looking at the will as a whole, we find that the testator owned property bequeathed in fee, and that he had in mind all of his heirs and his wife's heirs, because he made provisions for each of them.

"No expressions are contained in such (the) will whereby it shall (does) appear that such (the) devise was intended to convey an estate for life only," to Louisa or the other one-half to Fannie. Having provided for both his and his wife's heirs, there is no language used which could be construed that he intended to die intestate as to any portion of his estate. [Sec. 563, supra.]

It is a well-settled rule of law of this State that the presumption that the testator did not intend to die intestate as to any portion of his estate. With this presumption in mind and no expressions in the will to the contrary, we believe that the testator intended to give Louisa an equitable fee in the property left her, and an equitable fee in one-half the property left Fannie and an equitable life estate in the other one-half of the property bequeathed to Fannie. [In re McClelland, 257 S. W. 808.]

■ All bequests and annuities provided for by this will have been paid.

After the decree had been rendered appellants filed. a motion for the allowance out of the trust fund for their actual expenses incident to the trial, embracing the costs of taking depositions and the printing of briefs and for reasonable compensation to their counsel for their services rendered in the trial below. This motion was denied by the trial court.

It is the contention of the appellants that "where the parties who are seeking an allowance out of the trust fund, although unsuccessful in the construction of the will urged by them upon the court, act in good faith, touching an ambiguous will or trust, the fund should bear the expense of the litigation as an incident of its proper administration." Appellants rely upon our case of City of St. Louis v. McAllister, 302 Mo. 152, 257 S. W. 425, as an authority for their right to an allowance of expenses and a reasonable attorney's fee out of the trust fund. In that case we said:

"It is a doctrine of equity that a trust fund of right should bear the expenses of its own administration. In conformity with this doctrine it has been generally held, that in cases where doubt arises as to the true construction of an instrument by which a trust is created, and there are different claimants, the trustee may bring his bill, setting forth the facts, and calling upon the claimants to settle their

rights before the court, and praying the order of the court in regard to the mode of executing the trust, and the expenses of the litigation, as respects all the parties, and as between attorney and client, are properly charged upon the fund. [1 Redfield on Wills (4 Ed.) 493-495.] In such cases the litigation is regarded as indispensable to the proper administration of the fund, it being necessary that all persons having an interest therein, or making claim thereto, should be made parties and be afforded an opportunity of being fully heard, to the end that their several rights and claims be judicially determined and set at rest. *However, the persons, other than the trustee, entitled to costs in such cases, ordinarily are limited to those whom it is necessary for the trustee to bring before the court as parties, in order to obtain a valid decree to protect himself in the discharge of his duties in disposing of the trust fund.* [2 Perry on Trusts (6 Ed.), sec. 899.]'' (Italics ours.)

As we see it, the question to be determined is, are the appellants necessary parties for a proper construction of the will, so that the trustee could obtain a proper decree to protect himself in the discharge of his duties in disposing of the trust fund? Respondents contend that the appellants could have no interest in this trust fund even if the appellants' construction of the will had been held to be correct.

Appellants do not claim to be heirs of the testator; they are heirs of the testator's predeceased wife and base their claim on Section 308, Revised Statutes 1929, which is as follows:

"If there be no children or their descendants, father, mother, brother nor sister, nor their descendants, husband or wife, nor any paternal nor maternal kindred capable of inheriting, the whole shall go to the kindred of the wife or husband of the intestate, in the like course as if such wife or husband had survived the intestate, and then died entitled to the estate."

The undisputed testimony shows that when the testator died he left surviving him a brother, Josiah Pye, who had a son by the name of Joseph or Josiah; a niece, Mrs. Dusenberry; a grandnephew, Charles Weeks, and a sister named Mrs. Charles L. Wheeler. As above stated the appellants employed investigators in Cincinnati, New York, and Brooklyn who testified that they were unable to locate any person who claimed to be an heir of the testator in either of those cities.

In the case of Buckhorn v. Greenwood, 208 S. W. 59, in speaking of the above section we said:

"They are not his relatives by consanguinity, and can only inherit from him upon the condition prescribed in the section quoted. To satisfy that condition they must prove that he left 'no children or their descendants, father, mother, brother nor sister, nor their descendants, husband or wife, nor any paternal nor maternal kindred

capable of inheriting.' Any person coming within this description would, of course, 'impede the descent' to them. Were this burden not placed upon them, any person could at any time, by showing that he was a relative, ever so distant, of an intestate, call upon the occupying heir, however close in consanguinity, to affirmatively prove all the facts constituting his right, including his own legitimacy, or abandon his inheritance. The absurdity of this constitutes the foundation of the rule of law which we have quoted from the plaintiffs' brief. *By its force, as applied to this case, these claimants must show that there was, at the time of the death of the testate no person in existence to impede the descent to themselves.* This class of *impedimenta* as applied to them, would include all paternal and maternal kindred capable of inheriting, for this is the condition which the statute attaches to their right. Their failure to do this is the ground upon which this judgment stands.'' (Italics ours.)

The record shows that the testator was survived by a brother and sister and descendants of a brother, and that is what the trial court found by its decree. This fact is not disputed. These people would impede the descent to these appellants. Appellants do not bring themselves within Section 308, supra.

Appellants would have had no interest in the construction of the testator's will even if it had been construed that Louisa and Fannie had only an equitable life estate and the testator died intestate as to the remainder. The appellants under their own theory, could have no interest in the trust fund. They were not made parties to this litigation but voluntarily intervened. Appellants do not bring themselves within the rule of law announced in the case of the City of St. Louis v. McAllister, supra. They were not necessary parties but mere strangers to the proceeding for the construction of the will. We think the trial court properly overruled their application for attorneys' fees and expenses.

Finding no errors in the record, the judgment of the trial court is, therefore, affirmed.

July 9, 1934, on court's own motion, opinion modified and affirmed. All concur.