CORA ROBERTS, JAMES DALE, RUBY HOFFMAN and MARY DAVIS, Appellants v. EARL RANDLEMAN and LOTTIE RANDLEMAN, His Wife, and ALFRED SNOWDEN.—No. 38796.—180 S. W. (2d) 674.

Division Two, May 2, 1944.

Rehearing Denied, June 5, 1944.

*Dan Z. Gibson* and *Everett E. Teel* for appellants.

*Elliott & Kelso* for respondents.

WESTHUES, C.—Plaintiffs filed this suit in ejectment against defendants for possession of a tract of land situated in Vernon county, Missouri. The defendants by their answer asserted ownership of the land and asked the court to decree title in them and to declare that plaintiffs had no interest in the property. The trial court entered a judgment as prayed for by defendants declaring that the defendant Lottie Randleman was the owner in fee and that plaintiffs had no interest therein. Plaintiffs appealed.

Plaintiffs and defendants claimed ownership of the land by virtue of a deed executed by one James Morrison, September 24, 1928. Title depends on the interpretation to be placed on that deed. It reads as follows:

### "General Warranty Deed.

"This Indenture, made on the 24th day of September 1928 by and between James Morrison, a Widower, of the County of Vernon and State of Missouri, party of the first part, and Jennie M. Morrison of the County of Vernon in the State of Missouri, party of the second part,

"Witnesseth, that the said party of the first part, for the and in consideration of the sum of One ($1.00) Dollars to him paid by the said party of the second part, the receipt of which is hereby acknowledged, do by these presents Grant, Bargain And Sell, Convey And Confirm, unto the said party of the second part, her heirs and assigns, the following described lots, tracts or parcels of land, lying being and situate ▇▇▇ in the County of Vernon and State of Missouri, to-wit:

"All of Lot Nine (9) of the Northwest Quarter of Section Two (2) of Township Thirty-four (34) of Range Thirty-one (31) Except about Two and one third (2-⅓) acres out of the South west corner deeded to J. F. McKay and Henry Reed.

"Also all of that part of Lot Nine (9) and Ten (10) lying east of the Missouri Pacific Railway, in the Northeast Quarter of Section Three (3) Township Thirty-four (34) Range Thirty-one (31), not heretofore deeded for School purposes.

"The Second party to have full rights and privilege to sell or dispose of same at anytime for her own needs.

"But it is understood after the death of the second party that all property belonging to her shall go to the heirs of James Morrison, as the second party shall see fit.

"To Have And To Hold the premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging, or in anywise appertaining unto the said party of the second part, and unto her heirs and assigns forever; the said James Morrison hereby covenanting that he is lawfully seized of an indefeasible estate in fee in the premises herein conveyed; that he has good right to convey the same, that the premises are free and clear of any en-

cumbrances done or suffered by him or those under whom he claims, and that he will Warrant and Defend the title of the said premises unto the said party of the second part and unto her heirs and assigns forever, against the lawful claims and demands of all persons whomsoever.''

The deed was recorded on February 18, 1929. James Morrison, author of the deed, died January 12, 1929. His wife had predeceased him. Jennie M. Morrison, named as grantee in the deed, died testate on September 24, 1932. By her will, executed August 30, 1930, she devised the land in question to defendant Lottie Randleman. The will in so far as it pertains to this property reads as follows:

''I hereby will and devise to my sister, Cora Roberts, the east half of lot nine (9), of the northwest quarter of section two (2) township thirty four (34), range thirty-one (31), Vernon County, Missouri.
''Item three.

''I hereby will and devise to Lottie Randleman the west one-half of lot nine (9), of the northwest quarter of Section two (2), township thirty-four (34), range thirty-one (31), Vernon County, Missouri, except about two and one-third (2⅓) acres of the southwest corner thereof, and all of the residue of my personal estate remaining after the payment of my debts, including my funeral expenses.

''My reason for the bequest made to Lottie Randleman is my appreciation of her long service and continued kindness to me, and my desire to make some payment to her for the long and faithful service she has rendered to me.''

The heirs of James Morrison were plaintiffs: Cora Roberts, a daughter, and James Morrison Dale, Ruby Hoffman and Mary Davis, grandchildren, being children of a daughter who died in the year 1934. Jennie M. Morrison, while not related to James Morrison, had lived in the home of the Morrisons since childhood and was treated by them as their child. That probably explains why Cora Roberts was referred to in the will by Jennie as a sister. There was a suggestion in the record that she may have been a half-sister, Mrs. James Morrison having been married twice. James Morrison had conveyed and bequeathed other property to his two daughters. The defendant Lottie Randleman had lived in the James Morrison household since about the year 1920. She married the defendant Earl Randleman on September 8, 1928, and with her husband continued to make her home with the Morrisons. Morrison, as stated above, died the following January and from then on the Randlemans cultivated the land on shares pursuant to an agreement with Jennie Morrison. Lottie Randleman in her testimony referred to Morrison as grandfather Morrison and to Jennie Morrison as Aunt Jennie. We assume that was because of her long residence with them and not because of any relationship. After the death of Jennie the Randlemans continued to occupy that portion of the land devised to Lottie. Mrs. Randleman paid an in-

heritance tax on the real estate and personal property she received through the will. Until shortly before the filing of this suit, August 11, 1942, all parties concerned evidently assumed that Mrs. Randleman was the owner in fee of the land. Plaintiff Dale was asked to sign a quitclaim deed for the purpose of perfecting the title of Mrs. Randleman in the land. This caused Dale to make an investigation and this suit soon followed. The defendants attempted to plead estoppel on the theory that plaintiffs' had knowledge of the deed in question and the will of Jennie Morrison and with that knowledge permitted Mrs. Randleman to pay an inheritance tax on the land in the sum of $126.19; that the plaintiffs permitted the Randlemans to convey a portion of this land to a school district for school purposes; that they, the defendants, paid the taxes and were in possession from September 24, 1932, to the date of filing suit. The ten year statute of limitations had not expired at the time suit was filed. This case, under the facts pleaded, should be governed by the statute of limitations and not equitable estoppel.

 What estate did Jennie Morrison receive through the deed in question? Our answer is that she received a life estate with power of disposal during her lifetime if necessary for her maintenance, with the additional power by will to designate in what manner the estate was to be divided among the heirs of James Morrison. It is evident, we think, that the grantor intended Jennie Morrison to have the full benefit of the property for her maintenance and if necessary that it be disposed of by her for that purpose. It is also evident the grantor intended that after the death of Jennie Morrison the property remaining should go to his heirs. Note the language in the deed:

"But it is understood after the death of the second party that all property belonging to her shall go to the heirs of James Morrison, as the second party shall see fit."

Jennie Morrison enjoyed the estate less than four years. She lived to be about sixty years of age and the grantor past eighty. Had she lived the same number of years as the grantor, she may have had occasion to dispose of the land for her own comfort.

Our conclusion that the deed vested a life estate in the grantee is supported by a number of well reasoned cases. Note the case of Blumer v. Gillespie, 338 Mo. 1113, 93 S. W. (2d) 939, where a similar question was presented to this court. In disposing of the question of whether the immediate grantee received a fee simple title this court said at page 943 (9) of 93 S. W. (2d):

"Appellant contends the provision in the will that the testator's son 'shall inherit what may remain of my estate after my wife's death' clearly indicates a power of disposition on the part of his wife, and, therefore, negatives the idea of a life estate with remainder over to the son.

"We cannot agree with this contention. For reasons already stated we are convinced that the wife took a life estate under the will. If she had a superadded power of disposition, that would not convert the life estate into a fee. Chapman v. Chapman, 336 Mo. 98, 77 S. W. (2d) 87, 90; Van Every v. McKay, 331 Mo. 355, 53 S. W. (2d) 873, 875. It is, therefore, not necessary to determine whether she did or did not have the power of disposition."

In this case Jennie Morrison did have the power of disposition but it was a conditional power, that is, it was to be exercised only if necessary for her own needs. Such a power of disposition is inconsistent with a fee simple title and adds weight to the argument that the grantor intended the grantee to have only a life estate. Nor is the latter clause in the deed,

"But it is understood after the death of the second party that all property belonging to her shall go to the heirs of James Morrison, *as the second party shall see fit.*" (Italics ours), inconsistent with the theory that the grantee received only a life estate. That clause created a power of disposal to a limited class, that is, to the heirs of James Morrison. Mrs. Randleman was not an heir of James Morrison and therefore Jennie Morrison had no legal authority to devise the property in question to her. In reaching the above conclusion we have followed the well established rule of law that the intention of the grantor as expressed in the instrument must control. Keller v. Keller, 338 Mo. 731, 92 S. W. (2d) 157, 1. c. 159 (1). We have not been unmindful of the principle of law that a grant of an absolute fee cannot be curtailed by a subsequent doubtful or repugnant provision. In Triplett v. Triplett, 332 Mo. 870, 60 S. W. (2d) 13, 1. c. 16 (6, 7), this court stated the rule thus:

"When an estate in fee is granted by a deed or will, such an estate cannot be cut down to a lesser estate by a repugnant provision. To do so, the subsequent clause must be equally as clear as the granting clause, so that all clauses in the deed can be harmonized. That cannot be done in this case."

In the case before us, when all the clauses are read together, it is evident and clear that the grantee received only a life estate.

Respondents in their argument suggest that the devise to Lottie Randleman was in consideration of labor performed by her for the benefit of the testatrix. The point was not mentioned under points and authorities. This contention was not sustained by the evidence. The record reveals that the Randlemans rented the farm on shares from Jennie Morrison. The terms were definite as will be noted by the following evidence of Earl Randleman:

"Q. And what were the arrangements by which you and Jennie— you and Lottie, were to stay there? A. I gave her two-fifths of all the grain rent on the corn, and one-third of all of the small grain, and paid her pasture rent, and we had one half in with the chickens.

me and my wife, and she got half the proceeds, and never charged her a cent.''

There was no occasion for any charge to be made against Jennie Morrison by the Randlemans. They were receiving a share of the crop for their labor. Any labor performed by Mrs. Randleman prior to the death of James Morrison, if she was not paid therefor, was a charge against his estate. That is not now involved. It is also evident that under the terms of the rental there was no occasion for Jennie Morrison to take advantage of the power of disposal for her own needs of any property she received under the deed. The evidence disclosed she had personal property of her own which she bequeathed to Mrs. Randleman. The point made that the devise of the real estate was in payment of labor performed for the benefit of the testatrix is without merit and must fail.

This case cannot affect the title to the portion of the land sold to the school district. The district is not a party to this suit and therefore is not bound by any judgment that may be entered in this case.

The trial court entered judgment for the defendants who had had possession of the land. It was therefore not necessary to consider the rental value of the land or to adjudge the equities existing in favor of the defendants. Upon the meager record presented we are unable to adjudicate that question. When the case reaches the circuit court on remand that court can, upon a hearing, adjudge the rights of the parties. The defendants should be permitted to plead and present any equities that may exist that are allowable in such cases.

The judgment of the trial court is reversed with directions to enter a judgment for plaintiffs decreeing them to be the owners of the land and also to adjudicate the question of an accounting between the parties to this suit. It is so ordered. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.